FLOYD MILLER, Respondent, v. WALSH FIRE CLAY PRODUCTS COMPANY, a Corporation, Appellant.*

St. Louis Court of Appeals.    Opinion filed March 2, 1926.

1. **MASTER AND SERVANT:** Negligence: General Negligence: Servant Injured: Poisonous Gas Inhaled: Sufficiency of Petition. In an action for damages for personal injuries alleged to have been caused by poisonous gas inhaled, petition *held* to charge general negligence.

2. ———: ———: ———: ———: ———: Res Ipsa Loquitur: Evidnce: Sufficiency. Evidence held to make out a case of presumptive or inferential negligence under the *res ipsa loquitur* rule where poisonous gas escaped into a gas producer while plaintiff was inside repairing it.

3. ———: ———: ———: ———: ———: Assumption of Risk. In an action for damages for personal injuries alleged to have been caused by poisonious gas inhaled, *held* that plaintiff did not assume the risk of inhaling gas by reason of the work he was performing.

Miller v. Fire Clay Products Co.

4. ———: ———: ———: ———: ———: Contributory Negligence. In an action for damages for personal injuries alleged to have been caused by poisonous gas inhaled, *held* that plaintiff was not guilty of contributory negligence barring a recovery in not promptly quitting the gas producer where he was working when the gas entered.

5. **TRIAL PRACTICE:** Jury Informed Doctor Treating Plaintiff Charged Insurance Company for Services: Refusal of Trial Court to Discharge Jury: Proper. In an action for damages for personal injuries, the trial court properly refused to discharge the jury at the request of defendant because a witness volunteered a statement that the doctor treating plaintiff charged the insurance company for services, thus indicating that the insurance company would indemnify defendant for any verdict, especially where the witness, who was the physician's assistant, gave testimony calculated to minimize the plaintiff's injuries and reduce his damages and the statement of the witness evidently came into the case by mere accident and without any design on the part of plaintiff's counsel.

6. **MASTER AND SERVANT:** Negligence: Servant Injured: Poisonous Gas Inhaled: Evidence: Electric Fan Used to Keep Gas Out of Producer: Admissible Where Defense Was That No Gas Entered. In an action for damages for personal injuries alleged to have been received by inhaling poisonous gas in a gas producer, evidence that other employees who went into the gas producer to complete repairs which had been commenced by plaintiff were provided with an electric fan which was placed in the producer to keep the gas out while the workmen were completing the repairs *held* admissible where the defense was that no gas, in fact, entered the producer, such evidence not violating the rule that it is not competent to show that defendant made repairs or remedied defects or condition subsequent to injury in suit.

7. ———: ———: ———: ———: ———: Conceded Facts: If Gas in Producer It Entered Through Gooseneck and Dust Leg: Testimony That Gas Could Enter No Other Way: Not Prejudicial. In an action for damages for personal injuries alleged to have been caused by inhaling poisonous gas in a gas producer, where all the evidence concedes that if, in fact, gas came into the producer while plaintiff was at work there, it was forced by back pressure into the producer through the gooseneck and dust leg, testimony that there was no other connection by which the gas could get into the producer *held* not objectionable as being the conclusion of the witness or invading the province of the jury, and harmless as defendant denied that any gas had entered the producer.

Miller v. Fire Clay Products Co.

8. ———: ———: ———: ———: **Res Ipsa Loquitur: Specific Negligence.** Plaintiff who was injured by inhaling poisonous gas while at work in a gas producer *held* entitled to invoke *res ipsa loquitur* rule, though he undertook to show some specific negligence on the part of defendant, where just what caused or permitted the gas to escape did not appear.

9. **DAMAGES: Instructions: Future Pain: Instruction Warranted by Evidence.** In an action for damages for personal injuries alleged to have been caused by inhaling poisonous gas, evidence *held* to warrant plaintiff's instructions on the measure of damages permitting a recovery for future pain.

10. **REMARKS OF COUNSEL: Comment of Plaintiff's Counsel to Jury on Master's Failure to Produce Master Mechanic as Witness: Proper.** In an action for damages for personal injuries received by plaintiff in a gas producer, the court properly allowed plaintiff's counsel to comment to the jury on defendant's failure to produce its master mechanic as a witness, though plaintiff took his deposition which was not signed by the witness and defendant did not offer to read it to the jury.

11. **DAMAGES: Excessive Damages: Poisonous Gas Inhaled: Plaintiff Suffering Injuries to Heart and Lungs and Unable to Perform Hard Labor: Verdict for $4000 Not Excessive.** In an action for damages for personal injuries a verdict of $4000 *held* not excessive where plaintiff, who inhaled poisonous gas while working in a gas producer, sustained injury to his heart, the heart flabby and slightly enlarged, which condition was probably permanent, was unable to perform hard labor and his earning capacity greatly reduced and was in need of medical attention.

12. ———: ———: ———: ———: **Conflicting Evidence: Question for the Jury.** In an action for damages where the testimony as to whether the condition of plaintiff's heart and lungs resulted from inhaling poisonous gas or from other causes *held*, where the evidence was conflicting, the question was one for the jury.

*Corpus Juris-Cyc. References; Appeal and Error, 4 C. J., p. 978, n. 4. Damages, 17 C. J., p. 1059, n. 64; p. 1076, n. 11; p. 1100, n. 20. Liability Insurance, 36 C. J., p. 1129, n. 80, 81 New. Master and Servant, 39 C. J., p. 922, n. 60; p. 959, n. 69; p. 976, n. 8; p. 981, n. 22 New; p. 1020, n. 97, 8; p. 1186, n. 5; p. 1194, n. 35. Trial, 38 Cyc., p. 1490, n. 26.

Appeal from the Circuit Court of Audrain County.—
*Hon. Ernest S. Gantt,* Judge.

AFFIRMED.

*Harry E. Wiehe, Barrow & Barrow* and *Rodgers & Buffington* for appellant.

(1) The court erred in overruling defendant's motion to require plaintiff to make his petition more definite and certain because: (a) The doctrine of *res ipsa loquitur* does not apply to the character of case pleaded in the petition. Brauer v. St. Louis County Gas Co., 238 S. W. 519; Sepple v. Gas Co., 125 Mo. App. 88; Nomath Hotel Co. v. Gas Co., 223 S. W. 981. (b) Plaintiff's evidence showed that he was not entitled to plead or rely on the doctrine of *res ipsa loquitur.* Klebe v. Distilling Co., 207 Mo. 492; Removitch v. Construction Co., 264 Mo. 43; McAnany v. Shipley, 189 Mo. App. 396. 396. (2) The court erred in permitting plaintiff to introduce evidence of subsequent repairs by defendant. Schermer v. McMahon, 108 Mo. App. 38; Mahaney v. Railroad, 108 Mo. 200. (3) The court erred in admitting testimony on the part of plaintiff evading the province of the jury. McAnany v. Henrici, 238 Mo. 111; Sanders v. Railroad, 134 Mo. 87; McClosk v. Publishing Co., 107 Mo. 262; Castanie v. Railroad, 249 Mo. 196; Thompson v. Livery Co., 214 Mo. 498; Walton v. Railroad, 40 Mo. App. 550; Bank v. Camery, 189 Mo. App. 545. (4) The court erred in refusing to discharge the jury when it was made evident to the jury that an insurance company would indemnify defendant for any verdict rendered against it. Trent v. Printing Co., 141 Mo. App. 452. (5) The court erred in refusing defendant's demurrers requested at the close of plaintiff's evidence in chief and at the close of all the evidence, because: (a) No actionable negligence was proven against defendant to make it liable for plaintiff's claimed injury. Nichols v. Chicago & Alton Ry. Co., 225 S. W. 681; Trigg v. Land & Lumber Co., 187 Mo. 236; Kliebe v. Distilling Co., 207 Mo. 480; Pruett v. Lumber Co., 188 Mo. App. 347; Russell v. Railway Co., 245 S. W. 590; Krampe v. Brewing

Assn., 59 Mo. App. 281; Removitch v. Construction Co., 264 Mo. 43; Zasemowick v. Mfg. Co., 213 S. W. 803; Brewing Ass'n. v. Talbot, 141 Mo. 682; McGrath v. Transit Co., 197 Mo. 97. (b) Plaintiff was guilty of negligence barring recovery in not promptly quitting the producer by going out at the bottom thereof. Mc-Grath v. Transit Co., 197 Mo. 97. (c) Plaintiff assumed the risk of inhaling gas by reason of the work he was performing. Patrum v. Railroad, 259 Mo. 120. (d) Plaintiff failed to prove the negligence alleged in the petition. (6) The court erred in giving plaintiff's instructions Nos. 2, 3 and 5 and each of them for the reason that they were improper under the pleadings and proof. Cook v. Power Co., 232 S. W. 248; McAnany v. Shipley, 189 Mo. App. 396; Ward v. Fuel Co., 264 S. W. 80; State v. Ellison, 195 S. W. 724; Stid v. Railroad, 236 Mo. 400. (7) The court erred in permitting plaintiff's counsel in the argument to the jury to charge defendant with failure to produce Kretschmar as a witness. Atkinson v. Railroad, 228 S. W. 485. (8) The court erred in permitting plaintiff's counsel to make a highly inflammatory, intemperate and prejudicial argument to the jury. State v. Burns, 228 S. W. 763 and cases cited. (9) The verdict is excessive and the result of passion and prejudice. Brady v. Railroad, 206 Mo. 540; McGraw v. O'Neil, 123 Mo. App. 701; Ostertag v. Railroad, 261 Mo. 479; Barrie v. Cape Girardeau, 112 S. W. 724.

*Gatson & Price* and *Frank Hollingsworth* for respondent.

SUTTON, C.—This is an action for personal injuries. The petition alleges that defendant is now, and was at all the times hereinafter mentioned, a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, engaged in the manufacture of fire brick and other fire clay products at Vandalia, Audrain County, Missouri; that in the process

of manufacturing said fire brick the defendant has, and had at all the times herein mentioned, installed and did maintain and operate a number of gas producers for the purpose of manufacturing gas with which to burn or cure said fire brick and other fire clay products; that the gas so manufactured in said gas producers is a deadly and dangerous poison when inhaled or received into the human body and has a highly deleterious effect upon the human system when inhaled, of which said deadly and dangerous properties of said gas and its effects upon the human body the defendant, at all times herin mentioned, well knew, or by the exercise of ordinary care should have known; that said gas producers consist of a round steel or iron shell interlined with fire brick, somewhat similar in shape to the inverted frustrum of a cone, and are about eight feet in width at the top and about eight feet in width at the bottom and about ten feet in length from top to bottom; that underneath and separate from said cone-shaped shell an ash pan about eight feet in diameter and about two feet deep is situated, through the center of which said ash pan passes a hollow pipe at the top of which is fastened a cone-shaped cap or hood commonly called, and hereafter referred to as a blast hood, and that through this said pipe steam-laden air is blown, said hollow pipe having its footing on a concrete base and standing in an upright position, extending upward into the above-described cone-shaped shell about three feet, said hollow pipe being about twelve inches in diameter; that said cone-shaped shell is covered by a cast iron top through which coal is fed through an automatic feeding device located above said cone-shaped shell; that a large revolving poker, automatically operated, is inserted through a hole about two feet in diameter in the top covering of said producers; that said producers are supported by upright pillars which support a track upon which said producers revolve when in the operation of the manufacture of said poisonous and noxious gas; that the coal fed into said gas producers in the manner afore-

said is heated and burned therein by fire, the said fire being forced, blown or sucked through the coal in said cone-shaped shell by steam-laden air inducted into and through said fire by a hollow iron pipe that stands upright by the side of said gas producers from about an even height of the top thereof and extending down to and entering said shell from below, the steam-laden air passing through said hollow pipe and into and through said burning coal by virtue of pressure or suction of an apparatus known as a turbo-blower; that said gas producers maintained and operated by defendant in manufacturing said noxious and poisonous gas are arranged in pairs or groups, the gas from which said pairs or groups of producers, as manufactured, passes out of each of the producers through a large elbow or gooseneck hollow pipe and is stored or restrained in large tanks that stand upright near the side of said gas producers and extend above the top of said gas producers a distance of fifteen or twenty feet and below the tops of said gas producers a distance of five or six feet; that there are a large number of said large steel or iron tanks and they are connected one with another by means of hollow pipes, two or three feet in diameter; that the said gas manufactured in the gas producers aforesaid, passes thence into these tanks as aforesaid, and is thence forced in some way unknown to this plaintiff into a large pipe or conduit and there distributed into numerous firing kilns where said gas is used in the burning of said brick; that he is unable to describe or explain more fully how said poisonous gas is produced in said gas producers and that he is unable to explain how said poisonous gas is conducted from said gas producers into said tanks or how or in what manner it is restrained therein further than above detailed, or what, if any, means or methods are provided or in use to prevent said gas from flowing back into said gas producers when not in use; that all of said machinery connected with said gas producers and the said storage tanks, conduits and containers are extensively involved and compli-

cated and that the mode and manner of operating the said gas producers, storage tanks, conduits and containers and appliances connected therewith and the control and restraint of said poisonous gas is wholly unknown to plaintiff and that he has no skill in or knowledge of the operation and working thereof, but that all of said machinery and appliances in use in the production of said gas and the storage tanks, conduits, and containers used in storing, transporting and restraining the same were fully and completely under the control and operation of defendant and that the defendant then had and now has within its personal knowledge all the works and working of said machinery and appliances, storage tanks, conduits and containers used in connection with said gas producers and the manner and mode of storing, transporting and restraining said gas, and well knew that said gas was highly dangerous, poisonous and noxious if permitted to be unrestrained where human beings could or might come in contact therewith and receive or inhale the same into their bodies; that it is and was the duty of the defendant, its agents and employees in charge of said machinery used in the production thereof to have and exercise a degree of care in the restraint, manufacture and handling of said gas commensurate with the danger reasonably to be apprehended from its escape; that on or prior to the 28th day of March, 1923, he was in the employ of defendant working under the orders and directions of defendant's master mechanic but that his duties were merely those of repairing broken pieces of appliances, equipment, and tools used in connection with said defendant's fire clay products enterprise and he had no scientific or practical knowledge of the machinery there used by defendant in its said enterprise and especially the machinery, storage tanks, conduits and containers used in the production and restraint of said poisonous gas; that on said 28th day of March, 1923, he was ordered by said master mechanic to enter one of said gas producers and remove the cone-shaped cap or hood, desig-

nated as a blast hood, therefrom, and was given the assurance of said master mechanic that said gas producer was free of gas and that no gas could enter said gas producer; that he confidently relied upon said assurance so given him and that in order to remove said blast hood it was necessary for plaintiff to remove the above-described revolving poker in order that he might enter through the said poker hole into the gas producer as above described; that with the aid of a co-worker he removed said poker with a chain block, in the manner directed by said master mechanic, and entered said gas producer by means of a ladder placed through the hole from which said poker was removed; that when he entered said gas producer no trace of any gas was evident and that he proceeded to perform his work of removing the blast hood in the manner directed by said master mechanic; that he had been at work for about two hours when suddenly, without warning, and through no fault or carelessness of plaintiff in any way or manner, the said chamber of the gas producer became filled with said poisonous and noxious gas; that he was overcome by said poisonous and noxious gas so quickly that it was impossible for him to get out of the gas producer through his own efforts and he was finally rescued therefrom by workmen after having been completely overcome and after having inhaled into his body great quantities of said gas; that said noxious and poisonous gas was permitted to enter said gas producer by and through defendant's negligence and carelessness in failing to properly restrain said gas; and that as a direct result of the negligence and carelessness of defendant in permitting said gas to suddenly, unexpectedly and without warning escape into said gas producer in such an extremely unusual manner, and through no fault or carelessness of plaintiff, he has sustained serious and permanent injuries; that by reason of his injuries his health has been seriously impaired and affected; that his ability to work and his earning capacity have been greatly impaired; that he has suffered and will in the

future suffer great pain and anguish of both body and mind; that he has lost, and will in the future lose, much time from his work; and that he has necessarily incurred and will hereafter necessarily incur much expense for medical care, treatment and attention.

The cause was tried to a jury, there was a verdict and judgment for plaintiff for the sum of four thousand dollars, and defendant appeals.

The defendant manufactured fire brick at its plant, and in the process of making fire brick, gas was used as fuel with which the bricks were burned. This gas, which in appearance is a yellow colored smoke, was made at the plant from the burning of coal and is known as producer gas, and contains from twenty-one to thirty-seven per cent carbon monoxide, which is a poisonous substance, and when inhaled by a human being may result in death by suffocation, and if death does not ensue may nevertheless have a permanent deleterious effect upon the system.

The gas plant consists of three units with two producers in each unit connected by goosenecks, dust legs, and conduits. Each producer is a steel cylinder lined with fire brick with the lower half tapering to a cone shape and open at the bottom. The diameter of the upper half is about eight feet and the lower half smaller due to its cone shape. The height over all is about ten feet. Underneath and separated from the cone-shaped cylinder a distance of twelve inches is an ash pan resembling a bowl about eight feet in diameter and about two feet deep. A hollow pipe passes through the center of this ash pan and runs perpendicular in the cylinder shell to a height of about three feet. On top of this hollow pipe is placed a blast hood or twier resembling somewhat the top of a mushroom. Through the hollow pipe steam-laden air is blown and when striking the under side of the blast hood is disseminated evenly throughout the coal bed and provides the draft for the fire. The top of the producer is covered by an iron top and placed thereon is an automatic coal feeding device which distributes the coal from a bunker above through said feed-

ing device to the fire below. There is also in the top of the producer an opening through which a poker automatically operates and stirs the fire below. This poker hole is provided with a door which is kept closed when operating and opened at times when the producer is shut down. The cylinder part of the producer is supported by or hung to a circular track upon which the producer revolves when in operation. The detached ash pan or bowl is also made to revolve by other mechanical device for the purpose of relieving the fire of ashes while in operation. On top of the producer and connected with it is a large hollow pipe in the form of an elbow or gooseneck which runs to and is connected at its other end with a large round upright steel tank termed a dust leg about fifteen feet in height and about six feet in diameter. In the gooseneck is a door which is closed down when operating and opened when not. In the tank mentioned and a few feet above where the gooseneck enters it is a large flat-topped valve weighing approximately a ton, with a stem in the middle of it extending up to and through the top of the center of this tank. The diameter of the valve is slightly less than the diameter of the tank or dust leg. When the producer is in operation and making gas this valve is raised from its seat to the top of the tank and when the producer is shut down the valve is lowered and rests in its seat. The valve is raised and lowered by means of a chain block or hoist rigged or fastened to the rafters in the building and also attached to the top of the stem. The gas made in the producer passes through the gooseneck into this tank or dust leg and then to another similar tank or dust leg which is called the common dust leg, by reason of the fact that the producers are installed in pairs and are identical in equipment and the gas from each of the dust legs attached immediately to each of the producers runs into this common dust leg. From this common dust leg the gas runs into a smaller and connected cylindrical conduit called the downtake and from this downtake into and through a tunnel and there

is distributed to the several and various kilns where the gas is lighted and used in the burning of brick.

The producer in question here, and the other producers in the plant, were periodically shut down, and when a producer was shut down the valve in the dust leg would be lowered and seated, the door in the gooseneck opened, a door at the extreme bottom of the dust leg opened, and the fire dragged or cleaned out of the producer. When the valve was lowered or seated the upper half of the dust leg would remain filled with gas, whereas the lower half of the dust leg would in a short time be emptied of its gas by the circulation of air. After the producer was shut down, the valve lowered, the dust leg and gooseneck doors opened, and the fire dragged and ashes removed from the pan so as to leave the twelve inches of open space between the bottom of the producer and the ash pan, the producer would begin to cool and after a day to a day and a half's time it would be cold so that defendant's employees could go inside of it for any required purpose.

A back pressure occurs at times when the producers are operating by reason of soot accumulating on the walls of the tunnel or the conduit to the brick kilns and likewise when one producer is shut down and its twin operating. The function or purpose of the valve in the dust leg is to control the flow of the gas being manufactured in the live producer when one producer is dead and the other operating, so that the gas ultimately flows into and through the tunnel to the brick kilns and accordingly is prevented from flowing into the dead or down producer and through any of its openings out into the building.

The evidence for the plaintiff tended to show that when the producer in which the plaintiff received the injuries for which he sues was installed, the beveled edge on the valve of the dust leg had a small rough place on it which might prevent it from seating properly, and that this was called to the attention of the assistant superintendent of the plant at the time; that the producer

was shut down two or three weeks before the plaintiff was injured; that the blast hood had been burned so that it was necessary to replace it with a new one; that the plaintiff was a painter by trade; that he had no knowledge concerning the details of the construction or operation of the machinery and equipment employed in the manufacture of the gas, or as to the manner in which the gas was confined, controlled, or conveyed in and through the dust legs, conduits, and tunnels; that he was in the employ of the defendant as a machinist-helper; that he was not a machinist and knew nothing about the operation of the gas producers, his work being simply that of repairing broken pieces of machinery; that though he helped to install one of the gas producers, he did not help to install the dust legs and knew nothing about them; that on the day he was injured he and a fellow workman by the name of Dan Taylor were directed by the master mechanic to enter the producer and remove therefrom the blast hood; that in pursuance of such order he and Taylor removed the automatic poker and entered the producer by means of a ladder through the poker hole; that he and Taylor worked there about an hour and a half when the gas suddenly came in on them, and he was overcome by the gas before he was able to get out of the producer; that he was taken out of the producer by the assistance of fellow workmen; that he remained in an unconscious condition for about a half hour; that though persons could and sometimes did enter and leave the producer at the bottom, the customary way to enter and leave the producer was through the poker hole.

There was evidence for the defendant tending to show that the valve and the dust leg were properly and skillfully installed, that when the valve was seated it would prevent the gas from escaping from the dust leg into the producer, and that at the time the plaintiff was injured the valve of the dust leg had been lowered.

The employees who lowered the valve were not produced as witnesses, nor were their names disclosed at the trial.

The defendant assigns error upon the refusal of its demurrer to the evidence. This assignment is predicated on the grounds (1) that plaintiff made no proof of the specific negligence alleged in the petition, to-wit, a failure to warn, (2) that no actionable negligence was proved against the defendant, (3) that plaintiff assumed the risk of inhaling gas by reason of the work he was performing, and (4) that plaintiff was guilty of contributory negligence barring a recovery in not promptly quitting the producer when the gas entered. This assignment must be ruled against the defendant. The petition charges general negligence. The evidence makes out a clear case of presumptive or inferential negligence under the *res ipsa loquitur* rule. There is no merit in the suggestion that the plaintiff assumed the risk or was guilty of contributory negligence as a matter of law. [Myers v. City of Independence, — Mo. —, 189 S. W. 816; Ash v. Woodward & Tiernan Printing Co., — Mo., —, 199 S. W. 994; Ferguson v. Fulton Iron Works, — Mo. App. —, 259 S. W. 811; Daugherty v. Neosho Granby Mining Co., — Mo. App. —, 207 S. W. 253; Mayne v. Kansas City Rys. Co., 287 Mo. 235, 229 S. W. 386; Soltesz v. J. H. Belz Provision Co., — Mo. —, 260 S. W. 990; Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226, 237 S. W. 779; Cook v. Atlas Portland Cement Co., — Mo. App., —, 263 S. W. 1027; Jewell v. Kansas City Bolt & Nut Co., 231 Mo. 176, 132 S. W. 703; Koerner v. St. Louis Car Co., 209 Mo. 141, l. c. 157, 107 S. W. 481; Kettlehake v. American Car & Foundry Co., 171 Mo. App. 528, 153 S. W. 552; Nelson v. Zamboni (Minn.), 204 N. W. 943.]

Defendant insists that the court erred in refusing to discharge the jury when it was made evident to the jury that an insurance company would indemnify defendant for any verdict rendered against it. A witness produced on behalf of the defendant, who was an as-

sistant to a physician in Vandalia, testified concerning a visit of plaintiff and his fellow workman Taylor to the physician's office on the day that plaintiff was injured, for treatment of his injuries, and on cross-examination of the witness by plaintiff's counsel, the following occurred: "Q. And you put their names down? A. I did. Q. On your day book, you did that? A. I did. Q. You made no charge, did you? A. I did. Q. You made a charge? A. I made a charge. Q. How much did you charge them for the information that you had given them? A. I made a charge for the Maryland Casualty Company. Q. Oh, you charged them something for the Maryland Casualty Company? A. Because the Maryland Casualty Company—" Thereupon defendant's counsel objected, and the objection was sustained. Afterwards defendant's counsel moved the court to discharge the jury because the witness had named the Maryland Casualty Company as one against whom she made a charge for the visit of the plaintiff and Taylor. Counsel also stated at the time that in point of fact the Maryland Casualty Company carried indemnity insurance for the defendant covering its liability in this case. The court overruled the motion to discharge the jury. There was no error in this ruling of the court. The information that a charge had been made in the physician's book for the visit of plaintiff and Taylor against the insurance company evidently came into the case by mere accident and without any design on the part of plaintiff's counsel. The statement conveying this information was made by the witness in an answer that was not responsive to the question propounded. The question did not call for the information which the witness volunteered to give. The objection made by counsel was promptly sustained by the court. Besides, the witness had given testimony calculated to minimize the plaintiff's injury and reduce his damages, and we see no reason why the plaintiff was not entitled to have the jury know that the witness' employer was in the service and pay of an insurance company vitally interested in re-

ducing the plaintiff's damages, or why the defendant was entitled to keep this information from the jury and thus permit the insurance company to strike the plaintiff from ambush. [Snyder v. Wagner Electric Mfg. Co., 284 Mo. 285, 1. c. 310, 223 S. W. 911.]

George Marsh, produced by plaintiff, testified that a few hours after plaintiff and Taylor were gassed in the producer, Kretschmar, who was master mechanic, or maintenance man, in charge of and supervising the work of repairing the blast hood in the producer, ordered the witness and another workman to go into the producer and complete the repairs which had been commenced by plaintiff and Taylor; that when the witness and the other workman went into the producer for the purpose of completing the repairs gas was oozing from the dust leg through the gooseneck into the producer; that they placed an electric fan in the producer to keep the gas out while they worked; that the assistant superintendent of the plant brought the fan to them. The testimony in relation to the placing of the electric fan in the producer to keep the gas out while the workmen were completing the repairs on the blast hood was objected to, and its admission is assigned as error here. It is urged that the court in the admission of this testimony violated the rule that it is not competent to show that defendant made repairs or remedied defects or conditions subsequent to the injury in suit. We think the rule invoked ought not to apply here. The defense made in this case by the defendant in the court below was that no gas in fact entered the producer from the dust leg while the plaintiff was engaged in work there, that the plaintiff was not in fact gassed, and that gas did not and could not escape from the dust leg. In view of this, it was competent to show, and we do not understand that defendant contends it was not, that when the workmen went into the producer to complete the repairs on the blast hood a few hours after the plaintiff was gassed, there was gas coming into the producer through the gooseneck from the dust leg. In order that plaintiff

might get the testimony concerning this fact before the jury in a shape to be of any value to him, it was necessary that the jury should know that a fan was placed in the producer to keep the gas out so that they might understand why the workmen could remain in the producer and perform their work without any serious consequences to themselves.

The defendant assigns error upon the ruling of the court in permitting plaintiff's witness Harvey to testify that when there was no gas in the producer there was no way that gas could get into the gooseneck except from the dust leg; that when the producer was closed down there was no way for gas to get into the producer except by back pressure through the dust leg and gooseneck; that there was no other connection by which the gas could get into the producer. It is urged that this testimony was objectionable because it was a conclusion of the witness and invaded the province of the jury. We are unable to see what harm could have resulted from permitting the witness to thus testify. All the evidence concedes that if in fact gas came into the producer while the plaintiff was at work there, it was forced by back pressure into the producer through the gooseneck and dust leg.

The assignments of error made by defendant in relation to plaintiff's instructions, predicated upon the erroneous assumption that the doctrine of *res ipsa loquitur* may not be invoked in this case, are necessarily ruled against the defendant from what has already been said.

There is no merit in the suggestion that the plaintiff was not entitled to invoke the *res ipsa loquitur* rule, because he undertook to show some specific negligence on the part of the defendant. [Price v. Metropolitan Street Ry. Co., 220 Mo. 435, l. c. 456, 119 S. W. 932.] Plaintiff made proof that there was a rough place on the beveled edge of the valve in the dust leg at the time of its installation and that this was called to the attention of defendant's master mechanic, but it did not conclusively

appear that this was what caused or permitted the gas to escape from the dust leg. Just what caused or permitted the gas to escape did not appear. Whether it escaped by reason of the failure to properly seat the valve or from some defective condition of the valve, valve seat, or dust leg, was not shown. These were matters peculiarly within the knowledge of the defendant. The plaintiff had no knowledge or means of knowledge concerning them. That the gas did in fact escape there can be no question if plaintiff's evidence is to be believed, and the jury evidently believed it.

Likewise, there is no merit in the complaint that plaintiff's instructions on the measure of damages permitted a recovery for future pain. There was ample evidence upon which to predicate this feature of the instruction.

The defendant assigns error upon the ruling of the court in permitting plaintiff's counsel to comment in his argument to the jury upon the failure of the defendant to produce Kretschmar as a witness. There was no error in this ruling. The failure of the defendant to produce Kretschmar as a witness was a proper matter for comment in argument. Kretschmar was the defendant's master mechanic or maintenance man at the time the plaintiff was injured. It was Kretschmar's duty to inspect and keep in repair and proper condition the machinery and equipment of defendant's plant. The work that plaintiff was performing at the time he was injured was under Kretschmar's supervision. Kretschmar must have been in possession of salient facts material to the issues on trial. He knew or ought to have known the condition of the valve and dust leg from which the gas escaped, at the time of plaintiff's injury. He doubtless also knew whether or not gas in fact escaped from the dust leg and entered the producer while the plaintiff was at work there. His whereabouts was known to the defendant at the time of the trial. Though his relation to the defendant as an employee had been severed at the time of the trial, nevertheless he

would reasonably be expected to be friendly to the defendant and disposed to favor it in his testimony. He was therefore peculiarly available to the defendant. It was the defendant's duty to produce him as a witness or suffer without complaint the unfavorable inference to be legitimately drawn from its failure to do so. The fact that the plaintiff took his deposition did not excuse the failure of the defendant to produce him as a witness. The deposition was never signed by the witness, nor was his signature waived. What the deposition contained does not appear. The defendant did not offer to read it to the jury. There was no obligation on the plaintiff to read to the jury the deposition of an unfriendly witness and avouch his credibility. Notwithstanding the deposition, the witness was peculiarly available to the defendant, and defendant was not excused thereby from the obligation to produce the witness. [Brigham City Fruit Growers' Ass'n v. Zollmann Produce Co., — Mo. —, 220 S. W. 911, l. c. 918; McCord v. Schaff, — Mo. —, 216 S. W. 320; Fuerstenberg v. Kram, — Mo. App. —, 249 S. W. 143; Reyburn v. Missouri Pacific R. Co., 187 Mo. 565, l. c. 575, 86 S. W. 174; Murrell v. Kansas City, St. L. & C. R. Co., — Mo. —, 213 S. W. 964, l. c. 969.]

Other complaints are made in relation to the argument of plaintiff's counsel to the jury and the rulings of the court thereon. We have carefully examined the record to which these complaints relate, and we find no substantial merit in them.

The defendant insists that the verdict is excessive. The evidence shows that at the time of the trial plaintiff was suffering from rapid heart action; that when he was at rest the heart action was at the rate of 104 beats per minute, and that after exertion the rate was 140; that the heart was flabby and slightly enlarged; that this condition of the heart is probably permanent; that there were lesions or striae in the lungs and the expansion of the right lung was curtailed; that plaintiff had suffered and continued to suffer great pain from his injuries; that he was unable to perform hard labor; that

his earning capacity was greatly reduced; that he was in need of medical attention; that he was subject to fainting or sinking spells; that on account of these attacks he several times fell from ladders while engaged in his work as a painter; that he was twenty-five years old at the time of his injury. The testimony was conflicting as to whether the condition of plaintiff's heart and lungs resulted from his injuries or from other causes, but the conflicting evidence was for the jury. We see no cause to disturb the verdict for excessiveness.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUT-TON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker & Nipper, JJ.,* concur.