Thelma ROBINSON,
Appellant-Respondent,

v.

SAFEWAY STORES, INC.,
Respondent-Appellant.

No. WD33154.

Missouri Court of Appeals,
Western District.

May 31, 1983.

Motion For Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Aug. 2, 1983.

Application to Transfer Denied
Sept. 20, 1983.

Joseph W. Amick, P.C., Kansas City, for appellant-respondent Robinson.

Stephen S. Brown, Niewalk, Risjord & Waldeck, Kansas City, for respondent-appellant Safeway Stores, Inc.

Before SHANGLER, P.J., and PRITCH-ARD and DIXON, JJ.

DIXON, Judge.

Cross-appeals from a jury verdict for plaintiff in her "slip and fall" suit against defendant Safeway. The jury awarded Mrs. Robinson $140,000 on her claim for damages. Although it found in Mr. Robinson's favor on his claim for loss of consortium, the jury awarded the husband no damages. Safeway appeals the trial court's refusal to grant it a directed verdict, and

plaintiff appeals the court's grant of a new trial.

In its appeal Safeway contends that Mrs. Robinson was contributorily negligent as a matter of law, that the trial court erroneously admitted evidence that the store's employees mopped the accident site after the fall, that there was no evidence that Safeway had notice of the condition, and that plaintiff's verdict director contained a roving commission. Plaintiff's cross-appeal is from the grant of a new trial on the sole ground that plaintiff's verdict directing instruction was erroneous.

On a review of defendant's claim that its motion for directed verdict should have been granted because plaintiff was contributorily negligent as a matter of law, the facts are considered in the light most favorable to plaintiff, and she is given the benefit of all reasonable inferences that can be drawn from the evidence. Defendant's evidence, on the other hand, is disregarded except insofar as it is favorable to plaintiff. *Taylor v. F.W. Woolworth Co.*, 592 S.W.2d 210 (Mo.App.1979).

Plaintiff, a fifty-year-old housewife at the time of the accident, was driven to one of defendant's stores by her husband. She was wearing rubber soled sandals, which she said "fit pretty good." Having been let out of the car at the store's entrance, plaintiff entered the store by stepping on the "treadle," which caused the door to swing open. The rubber treadle extends into the store several feet beyond the threshold. Advertisements were posted on the door. Upon crossing the threshold, Mrs. Robinson headed for the shopping carts. She observed "the floor and the shopping carts all at once."

On her first or second step beyond the end of the treadle, plaintiff slipped and fell in some water that had accumulated on Safeway's light-colored tile floor. Her testimony was that she did not see the water until she started slipping. The evidence varied as to the size and nature of the water on the floor. Mrs. Robinson testified that it was a clear puddle as big as the length of her body and that her slacks and

blouse became wet from their contact with the floor. Mrs. Robinson fractured her left patella, or kneecap, in the fall. Plaintiff had very restricted flection in her left leg and suffered ongoing pain.

It had been raining off and on all day the day of the fall. One of defendant's employees on duty in the booth near the entrance testified she had observed water, apparently tracked in by customers, near the entrance throughout the day. The paramedics who responded to the emergency call minutes after the fall observed water, or dampness, on the floor in the vicinity of the accident.

It was the store's policy to have a mat at the end of the treadle at all times. If in the proper position, the mat absorbs water tracked in by customers as they step off the treadle. The red mat was not in its assigned position when Mrs. Robinson entered the store, nor when the paramedics arrived to assist her.

The court did not err in refusing to direct a verdict for defendant. That it had been a rainy day did not impute to plaintiff knowledge of the dangerous condition on defendant's floor. *Shannon v. Washington University*, 575 S.W.2d 235 (Mo.App.1978). Defendant argues that because plaintiff admitted she was aware that wet tile floors are slick, she was aware of the danger posed by defendant's wet floor. The argument might have merit if plaintiff had also admitted seeing the water before she stepped in it, but that was not her testimony. Mrs. Robinson did not see the water until after she started to fall. The wet area was within one or two steps of the end of the treadle, so plaintiff would have had to immediately direct her gaze downward on passing through the door in order to have seen it in time to avoid walking in it. Advertisements on the door may have prevented her from seeing it sooner. And while it is true, of course, that plaintiff was required to exercise ordinary care for her own safety, that standard does not require her to glance down with every step. *Cunningham v. Bellerive Hotel, Inc.*, 490 S.W.2d 104 (Mo.1973); *Melchior v. Madesco Invest-*

*ment Corp.,* 622 S.W.2d 362 (Mo.App.1981). Nor does the fact that Mrs. Robinson testified that the wet area was as large as the length of her body (five feet) preclude her recovery. In *Melchior, supra,* the court held that defendant was not entitled to a directed verdict even though plaintiff stepped onto a sheet of ice that he described as being large as a skating rink. Of course, there were many factors present in *Melchior* that are not in this case, but it cannot be said as a matter of law that clear water on a light-colored tile floor posed a danger so open and obvious as to preclude submission of plaintiff's case. As the court said in *Summa v. Morgan Real Estate Co.,* 350 Mo. 205, 165 S.W.2d 390, 394 (1942):

> [W]hether the condition complained of was so obvious that the respondent was bound to see it and whether she was contributorily negligent in not observing it were both questions of fact for the jury's consideration and their finding, in these respects, is not based on such unreliable facts and circumstances that we may disturb it.

Safeway claims prejudicial error in the trial court's admission of testimony that mopping took place in the store's entryway after Mrs. Robinson's fall. Plaintiff called defendant's store manager as her first witness. He testified that there was no water at the end of the treadle plate either before or after plaintiff's fall, and that the mat was in its proper place the entire time. The issue first arose early in the trial in colloquy between counsel and the court out of the hearing of the jury. Plaintiff indicated that one of her witnesses would testify that he observed Safeway's employees mopping the area a short time after the fall. Plaintiff was planning to assert that evidence in the opening statement. This colloquy was addressed primarily to the use of that statement in the plaintiff's opening. Plaintiff apparently acquiesced in a ruling that prohibited the use of the challenged evidence in opening statement. Thereafter, plaintiff questioned the store manager about water. He denied water was present and denied any mopping occurred over the objection of defendant and after overruling its motion in limine, which was renewed at that time.

Evidence that tends to show the condition of the accident site at the time of the fall is admissible even though it runs afoul of the "repair rule," *Miller v. Walsh Fire Clay Products Co.,* 219 Mo.App. 590, 282 S.W. 141 (1926), particularly where condition is disputed. At the stage of the trial when the court agreed to allow the first questioning concerning the mopping, defendant's manager had made clear that the existence of a dangerous condition was hotly disputed and denied any mopping occurred. The trial court did not err in denying Safeway's motion to exclude any reference to mopping, and its ruling will not be disturbed on appeal. *Tripp v. Harryman,* 613 S.W.2d 943 (Mo.App.1981).

Defendant also urges that the prejudicial effect of the mopping testimony outweighed its probative value in light of the fact that there was much other evidence establishing the existence of water on Safeway's floor. In retrospect the mopping testimony was cumulative evidence. All three paramedics who attended Mrs. Robinson after the fall—two called by plaintiff and one by defendant—as well as the store's clerk and Mrs. Robinson, verified the existence of water, albeit in widely varying amounts. The court, however, made its ruling allowing the questioning only after the store manager had testified that no water was present. As the trial progressed and the challenged testimony was proferred, defendant could have renewed its objection, but did not.

Safeway also contends that there was no evidence to permit the line of questioning about the mopping. Safeway claims there was never any positive testimony that mopping actually took place, but that only plaintiff's questions put that implication before the jury. One of plaintiff's witnesses, a paramedic on the scene to treat plaintiff, testified that while he did not actually see a store employee in the act of mopping, he observed one in the immediate area of the fall holding a mop and bucket. The store's clerk, however, testified that she saw an-

other employee *mopping* the entryway after the fall. There was sufficient evidence that mopping took place to justify the questioning.

■ The store maintains that it was incumbent on plaintiff to establish constructive notice to Safeway of the presence of the water plaintiff slipped in. It was not necessary for plaintiff to establish constructive notice where the testimony of its employee established actual notice. *Taylor v. F.W. Woolworth Co.,* 592 S.W.2d 210 (Mo. App.1979). The store's clerk, on duty in the booth located approximately five feet from the entrance where plaintiff slipped, testified on cross-examination by plaintiff that she had seen water on the floor of the store near the entryway "throughout the day." This testimony was sufficient to establish actual notice to Safeway of the dangerous condition. That evidence makes further discussion of this point unnecessary.

■ Defendant asserts error in plaintiff's characterization of the agent causing the slippery condition as an "accumulation of water" in the first paragraph of her verdict director. Safeway argues that the proferred description of the slippery substance granted the jury a roving commission because it would allow recovery even if the jury believed the water was mere "tracking" as opposed to a "puddle" of water. The latter description of the water was used by defendant in its contributory negligence instruction. Defendant argues that permitting recovery for a fall due to "tracked in" water would be contrary to the law, citing *Wilburn v. Southwestern Bell Telephone Co.,* 382 S.W.2d 49 (Mo.App. 1964), and *Heidland v. Sears Roebuck & Co.,* 233 Mo.App. 874, 110 S.W.2d 795 (1937).

*Wilburn* turns on the fact there was no evidence as to the presence of any moisture on the floor which caused the plaintiff to fall. In *Heidland* the plaintiff did not even testify she slipped on the water another witness said was near where she fell. As *Wilburn* notes, all slip and fall cases turn on their own facts. Neither case holds that an accumulation of water tracked in by customers cannot be a basis for negligence.

*Heidland* has some broad language concerning the nature of the store owner's duty, but on its facts cannot be said to stand for such a proposition.

An "accumulation" of water is no less precise a description of the quantity or nature of the water than is a "puddle." Plaintiff's theory was that defendant negligently permitted water to remain on the floor at the end of the treadle plate without mopping it up or placing the rubber-backed red mat at the end of the treadle to absorb it. The reasonable inference under either hypothesis is that the water was tracked in by incoming customers. Use of the word "accumulation" was more connotative of the source of the water than "puddle," but was no more vague and ambiguous than "puddle." The source of the water, if it existed, was not in dispute—in fact, all the witnesses indicated it was "tracked in." Plaintiff's characterization of the slippery substance did not permit the jury to return a verdict based on ultimate facts that would make a plaintiff's verdict contrary to law.

■ Plaintiff's cross-appeal stems from the trial court's grant of defendant's motion for new trial on the sole ground plaintiff's verdict director improperly modified MAI 22.03 by inserting the words "in time to have avoided injury."

> Second, plaintiff Thelma Robinson did not know and by using ordinary care could not have known of this condition *in time to have avoided injury,* and

The emphasized phrase is not found in the pattern instructions. The other parts of the verdict directors conformed to MAI. When the trial court grants a motion for new trial on grounds of error in the instructions, the order is reviewed as a question of law. *Kuzuf v. Gebhardt,* 602 S.W.2d 446 (Mo. banc 1980).

■ Plaintiff argues that the modification was necessary to conform the instruction to the facts of the case—that the pattern instruction without modification would deny plaintiff recovery because she admitted seeing the water after she started to fall, in that instant of time before she actu-

ally struck the floor but after the slip inexorably leading to the fall was underway.

Safeway responds that the added phrase is the presumptively prejudicial deviation contemplated by the court when it announced the rule in *Brown v. St. Louis Public Service Co.,* 421 S.W.2d 255 (Mo. banc 1967). Safeway also complains that the modified instruction imposes an additional burden on defendant—that of having to prove the time that must lapse between plaintiff's observation of the dangerous condition and the time when injury is sustained.

Plaintiff does not cite, nor does our research reveal, any case approving addition of the temporal phrase to the element of plaintiff's knowledge in MAI 22.03. If a modification is required by the facts in the particular case, however, it falls outside the "presumptively prejudicial" rule. *Brown v. St. Louis Public Service Co.,* 421 S.W.2d 255 (Mo. banc 1967); *Smith v. Courter,* 575 S.W.2d 199 (Mo.App.1978). The question, then, is whether the facts necessitated modification of plaintiff's verdict director in order to "fairly submit the issues." Read literally, the second element of unmodified MAI 22.03 might preclude plaintiff's recovery. She testified that she appreciated the risk posed by a wet, tile floor. All that was lacking was her knowledge that defendant's floor was wet, knowledge that she admittedly acquired before the injury was suffered, but after it was too late to do anything to prevent it. In the "usual" invitee injury case, the issue posed by the second element of MAI 22.03 is whether plaintiff had knowledge of the dangerous condition. If he did, then "he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land." Restatement (Second) of Torts § 343A comment e (1965). As the comment points out, the invitee is "entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes." Under the circumstances of this case, however, plaintiff's confessed awareness of the dangerous nature of a wet tile floor did not put her on an equal basis with

defendant as far as ability to avoid the danger. The basis of the store's liability, its superior knowledge of a dangerous condition, was not eliminated by plaintiff's awareness of the condition at a point too late to be of use to her. The modification, therefore, was necessary and the trial court's order granting a new trial should be reversed and the jury's verdicts reinstated.

Defendant's complaint that the modification imposed an additional burden of proof on it is not well taken. It is plaintiff's burden to submit substantial evidence to support each element in her verdict director, not defendant's. Defendant's contributory negligence instruction submitted failure to "keep a lookout" without qualification which certainly permitted them to argue the plaintiff's failure to timely observe the water in which she fell.

■ Defendant complains the verdict director was not marked "modified." *Carvitto v. Ryle,* 495 S.W.2d 109 (Mo.App.1973), holds such a failure is error, the prejudicial effect of which must be judicially determined. Rule 70.02(d) plainly directs the manner of marking instructions. The legal file in this case makes it impossible to tell anything about the instructions. Some have typed a designation of source, some have handwritten notations, and there is no indication as to the source of the markings on the instructions. There is no indication of the giving or refusing of any of the instructions in the legal file furnished for this appeal. The transcript of the instruction conference was not included in the record on appeal, so there is no way to ascertain whether the modification was brought to defendant's or the court's attention, or whether there was an indication of such a modification on the copy as tendered. Although the practice of improperly marking the instruction is certainly not to be condoned, this record affords no basis for finding prejudicial error. *See Siteman v. Woodward-Clyde & Associates, Inc.,* 503 S.W.2d 141 (Mo.App.1973); *Carvitto v. Ryle,* 495 S.W.2d 109 (Mo.App.1973); *Buff-*

*ington v. Fairground Sales Co.*, 402 S.W.2d 59 (Mo.App.1966).

The trial court's refusal to grant Safeway a directed verdict is affirmed, and the court's grant of a new trial is reversed with the jury's verdict reinstated.

All concur.