**Marilyn NUGENT, Plaintiff/Appellant,**

v.

**OWENS–CORNING FIBERGLAS, INC., and ACandS, Inc., Defendants/Respondents.**

**No. 67232.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 4, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1996.

Application to Transfer Denied
Aug. 20, 1996.

---

Stephen H. Ringkamp, Mark J. Becker, The Hullverson Law Firm, St. Louis, for Appellant Marilyn Nugent.

Kurt L. Rusmussen, William T. Smith, III, Watson & Marshall, L.C., Kansas City, for Respondent Owens—Corning Fiberglas, Inc.

Joel A. Poole, Polsinelli, White, Vardeman & Shalton, St. Louis, for Respondent ACandS, Inc.

GERALD M. SMITH, Presiding Judge.

Plaintiff, Marilyn Nugent, individually and representatively for the children and parents of her husband, appeals from a judgment based on a jury verdict for defendants Owens–Corning Fiberglass Inc. and ACandS, Inc., in her wrongful death suit arising from the death of her husband from mesothelioma. We affirm.

Mesothelioma is a form of cancer primarily caused by exposure to asbestos. Plaintiff's husband, James, was an electrician by trade. During his career as an electrician, from 1954 to 1989, he was exposed to several asbestos-containing products, including "transite" a type of electrical conduit which he used in his work. Transite was not manufactured or distributed by defendants. All parties agree Nugent's exposures to Transite were substantial. Plaintiff alleged that her husband was also exposed to Kaylo, a product manufactured by Owens–Corning and used by ACandS, an insulating contractor, at two job sites where James Nugent was employed for lengths of time in dispute but not exceeding eighteen months. Nugent never directly used Kaylo. Plaintiff's theory was that asbestos dust which was generated from the insulators' use of Kaylo floated throughout the work sites and Nugent, a bystander, inhaled Kaylo dust which contributed to his contracting mesothelioma.

Plaintiff raises as error four occurrences at trial. The first involved the deposition of Willis Hazard, now deceased, which was taken in 1981 in an unrelated asbestos case. Hazard was an industrial hygienist employed by Owens–Illinois, Inc., which manufactured Kaylo until 1958 when Owens–Corning acquired the manufacturing rights from Owens–Illinois. Owens–Illinois was not a party in this lawsuit by the time of trial.

Plaintiff objected to the reading of the deposition because she was not a party to the suit in which it was taken, and was not present or represented at the deposition. She further contends on appeal that portions of the deposition were highly prejudicial and that a curative withdrawal instruction given by the trial court was insufficient to erase the prejudice. Some detailed statement of the proceedings dealing with the deposition is necessary.

In her pre-trial compliance plaintiff listed the Hazard deposition as a deposition plaintiff intended to read into evidence. Part of the Hazard deposition was exhibits. Two of the exhibits to the deposition dealt with the "Saranac" studies. Those studies were undertaken in 1943 by a laboratory employed by Owens–Illinois to study the effects of the breathing of Kaylo dust by animals, notably guinea pigs. A March 12, 1943, letter from the director of the laboratory to U.E. Bowes, the Director of Research of Owens–Illinois, contained the following paragraph: "The fact that you are starting with a mixture of quartz and asbestos would certainly suggest that you have all the ingredients for a first class hazard. However, the particle size of the former will, of course be determined." In a letter of November 16, 1948, the then director wrote to Bowes. That letter was to advise that prior reports of early tests which had tentatively concluded that Kaylo dust did not produce significant pulmonary damage when inhaled into the lungs were not correct. The letter stated:

"During the 30 to 36 months period, however, definite indication of tissue reaction

appeared in the lungs of animals inhaling Kaylo dust and therefore, I regret to say, our tentative conclusion quoted above must be altered. In all animals sacrificed after more than 30 months of exposure to Kaylo dust unmistakable evidence of asbestosis has developed, showing that Kaylo on inhalation is capable of producing asbestosis and must be regarded as a potentially-hazardous material."

Defendants sought by motion *in limine* to prevent the admission of these letters into evidence. The court denied the motion and held the exhibits to the deposition to be admissible.[1] The defendants sought during trial to offer the Hazard deposition to explain or negate the information contained in the two exhibit letters. Plaintiff objected and the court overruled the objection. It stated its reasons as follows:

With regard to the Hazard deposition, relying on *Maxwell v. City of Springfield,* 705 S.W.2d 90, as well as on the response of the plaintiffs to the defendants' motion *in limine* to exclude the Saranac documents, which relies on the Hazard deposition, the Court is (sic) determined that the Hazard deposition is admissible and *the Court will deal with specific objections to specific passages as needed.* (Emphasis supplied)

Owens-Corning supplied plaintiff's counsel with designations of the portions of the deposition it intended to read to the jury. Plaintiff made no objections to any specific portions designated to be read. Plaintiff's counsel supplied defendant with counter-designations of those portions of the deposition he desired read. The deposition was then read to the jury.[2] Later that day plaintiff moved to strike the Hazard deposition. General reference was made to opinions contained in the deposition but specific portions of the deposition were not cited to the court and no request was made to the court to strike anything less than the entire deposi-

tion. Defense counsel reminded the court that at the time the Saranac documents were approved for admission defense counsel had expressed his intention to place into evidence portions of the deposition to place the Saranac documents in context. That earlier exchange is part of the record. The court stated: "I don't see why you couldn't have objected to the opinions before he read it in. My ruling was on the deposition as a whole, and I hope I didn't mislead you into thinking that I was overruling any specific objections to designations within the deposition." The court then stated that the plaintiff's objections to the personal opinions of Hazard were meritorious, albeit belated. The court stated that it would give a withdrawal instruction on the opinion testimony.

The next day the court advised the jury:

Ladies and gentlemen, before I forget, you will recall that in the deposition of Willis Hazard, which was read to you yesterday, that he expressed certain opinions, personal opinions about the safety of asbestos as Kaylo and the need for a warning label or the lack of need for a warning label. Those opinions have been stricken from the record, those personal opinions he expressed, and you'll disregard them.

No objection to the withdrawal instruction was made by plaintiff, no request was made for any additional language in the withdrawal instruction and no other specific objectionable portions of the deposition were brought to the court's attention.

Plaintiff contends on appeal that the court erred in allowing the Hazard deposition to be read to the jury and that the withdrawal instruction was inadequate to remove the prejudice generated by the material read to the jury. Although not so delineated the plaintiff's position raises two separate inquiries: first, was the deposition properly admitted at all and, second, if so, did the court err in its subsequent efforts to remove from

---

**1.** The parties have not included in the legal file the documents filed as part of the motion in *limine* or in opposition to it. In her reply brief plaintiff acknowledged she utilized the Hazard deposition for foundational purposes.

**2.** We cannot be sure what portions of the deposition were read to the jury. The transcript states only that the deposition was read. Some, but we are inclined to believe not all, of the designations of Owens–Corning are shown on an exhibit in the record on appeal. We have not located plaintiff's counter-designations.

the record materials it concluded should not have been read.

The Saranac documents were allowed into evidence to establish that Owens–Corning had knowledge of the dangerous nature of Kaylo as early as 1943 and certainly at the time it acquired the rights to manufacture the product. Bowes, to whom the Saranac documents were addressed, was an employee of Owens–Illinois but was also on the board of Owens–Corning. The Hazard deposition further indicated that the Saranac documents were turned over to Owens–Corning at the time it acquired the rights to Kaylo. Hazard's deposition testimony was that subsequent research, studies and tests after the Saranac letters convinced Owens–Illinois and Hazard that the exposures of Kaylo to the guinea pigs were of such massive quantity and continuity that those studies did not establish that the much lower exposures that humans would be subject to would result in illness. Hazard testified that employees in the Kaylo manufacturing plants did not have increased illness and favorable test results were reached at those plants.

■ Whether to admit deposed testimony is a decision largely within the discretion of the trial court. *Keith v. Burlington Northern Railroad,* 889 S.W.2d 911 (Mo.App. 1994)[25–28]. We accord the trial court broad discretion in ruling on the use of depositions. *Id.* It was stated in *Massman v. Muehlebach,* 231 Mo.App. 72, 95 S.W.2d 808 (Mo.App.1936)[9]: "[i]t is a well-settled rule in this state that, where one party to a controversy invites evidence of a certain character, even if incompetent, he estops himself from objecting to the other party's following it up with testimony of the same character tending to explain his side of the controversy." In *Burrous v. American Airlines, Inc.,* 639 S.W.2d 263 (Mo.App.1982)[8–10] we stated: "It is the general rule that when one party reads a portion of a deposition the opposition may read some or all of the remainder in explanation." Similar holdings have been made in other cases. *Watson v. Landvatter,* 517 S.W.2d 117 (Mo.banc 1974)[8,9]; *State v. Jones,* 532 S.W.2d 772 (Mo.App.1975)[1]; *Keith v. Burlington Northern Railroad Company, supra.*

■ Plaintiff here utilized the Hazard deposition as the foundation for placing before the jury two exhibits to that deposition which indicated knowledge by Owens–Corning of dangerous qualities in Kaylo. Plaintiff contends that she did not read from the deposition asserting in her reply brief that she used the deposition solely as foundation. But it was only through the use of the deposition that she was able to place before the jury the damaging information which she did, and it is hypertechnical at best to assert that the deposition was not used because the body of the deposition was not itself read to the jury by the plaintiff, only exhibits thereto. The defense was therefore entitled to utilize the deposition to clarify the situation, rebut the inferences to be drawn from the plaintiff's exhibits, or explain its side of the controversy. There was material in the deposition to do all three. The trial court was within its discretion to overrule the only objection made by plaintiff to the deposition, that it be excluded in its entirety.

■ The second aspect of plaintiff's contention on appeal regarding the Hazard deposition is that the withdrawal instruction given by the court was inadequate. At the time the court advised the parties that the Hazard deposition would be admitted into evidence it specifically stated it would "deal with specific objections to specific passages as needed". Plaintiff made no objection to the designations of Owens–Corning of the portions of the depositions it intended to read. She raised no specific objection until some time later at which time she again challenged admission of the deposition as a whole, supporting that challenge by reference to opinions of Hazard. Despite the belated nature of the objection and the absence of any request for the striking of specific portions of the deposition, the trial court gave a withdrawal instruction as set forth above. Again there was no objection made to the withdrawal instruction given nor any request that any other or additional material be withdrawn from the jury. It is well established that where the action of the court is responsive to an objection made by counsel the court is not to be convicted of error for failure to take other and further curative

steps not then sought by the party now complaining. *Beck v. Modern American Life Insurance Co.,* 589 S.W.2d 98 (Mo.App. 1979)[16]. Here the court took curative steps for the benefit of the plaintiff beyond those requested, to which curative steps plaintiff made no further objection or request. We cannot convict the court of error under those circumstances.

■ Plaintiff's next two points deal with the testimony of her expert, Dr. Tuteur, and Owens–Corning's expert witness, Professor Ayer. Because of their interrelation we will deal with them together. In *Hagen v. Celotex Corporation,* 816 S.W.2d 667 (Mo.banc 1991)[2], it was held that in order for plaintiff to recover in an asbestos case there must be evidence that the product of each defendant sought to be held liable was a "substantial factor" in causing the harm. Both parties used two types of experts to prove or disprove the causation requirement of "substantial factor". Industrial hygienists were used to give an opinion of whether the exposure of the plaintiff to the asbestos product Kaylo at Nugent's work locations was "substantial". Medical doctors were utilized to give an opinion on whether substantial exposures to asbestos dust cause mesothelioma. Plaintiff's evidence from the industrial hygienist, Dr. Dement, was that as hypothesized to him the exposures at the job locations to Kaylo dust were substantial. Plaintiff's medical expert, Dr. Tuteur, testified that "substantial" exposures to asbestos dust was the cause or contributing cause-a substantial factor-in Nugent contracting mesothelioma. Plaintiff's evidence, if believed, established that Nugent had substantial exposures to Kaylo dust and that because Kaylo admittedly contains asbestos that such exposures were a cause or contributing cause of Nugent's mesothelioma.

Owens-Corning's industrial hygienist was Professor Ayer who testified that Nugent's exposures to Transite were substantial and his exposures to Kaylo were not substantial. Owens–Corning's medical expert testified that insubstantial exposures would not cause or contribute to cause mesothelioma-would not be a substantial factor in causing the disease.

Prior to Dr. Tuteur's testimony defendants objected to the witness testifying to causation specifically by Kaylo because plaintiff's designation concerning Dr. Tuteur did not indicate that he would so testify. Dr. Tuteur was a medical doctor.

The designation of Dr. Tuteur did not advise that he would be addressing the causative effects of Kaylo specifically. Nor did his report address itself to the effects of Kaylo specifically. The court allowed Dr. Tuteur to testify that all substantial exposures of Nugent to asbestos dust caused or contributed to cause Nugent's illness. It did not allow Dr. Tuteur to opine that exposure to Kaylo specifically was the causation.

The trial court allowed the parties thereafter to make amendments to their designations and defendants amended their designation of Professor Ayer to include specifically the question of the substantial quality of Nugent's exposure to Kaylo. The amendment was made considerably before Professor Ayer's testimony. The trial court limited Professor Ayer's testimony to the "substantiality of exposure to specific products, but no medical opinions regarding causation" was permitted. He could "talk about dust to his heart's content. He will not talk about causation of injury or absence of causation of injury".

Regardless of the reason for limitations placed on Dr. Tuteur's and Professor Ayer's testimony, the parties were treated identically as far as the nature of their expert's testimony. The industrial hygienists were restricted to their area of expertise the substantiality of Nugent's exposure to specific products. The medical doctors were restricted to their area of expertise-the relationship of substantial exposures to asbestos dust to Nugent's disease. Dr. Tuteur professed no expertise on levels of exposure and was not designated as such an expert. His opinion of Kaylo's effect could only be based on Dr. Dement's opinion that the exposure to Kaylo asbestos dust was substantial. The offer of proof concerning Dr. Tuteur did not hypothesize substantial exposures to Kaylo dust but simply its presence in the work environment. Plaintiff was not precluded, as she asserts, from establishing causation. If the jury be-

lieved Dr. Dement that Nugent had received substantial exposures to Kaylo dust, and believed Dr. Tuteur that all substantial exposures to asbestos dust caused or substantially contributed to Nugent's disease it presumably could have found proximate causation under *Hagen.*

■■■ The determination to admit or exclude expert testimony is left to the sound discretion of the trial court. *Dine v. Williams,* 830 S.W.2d 453 (Mo.App.1992)[8]. The court has discretion to determine whether a response under Rule 56.01 adequately details the nature of the expert's testimony. *Millard Farms, Inc. v. Sprock,* 829 S.W.2d 1 (Mo.App.1991)[5].[3] Each case is determined by its own facts as to whether an abuse of discretion occurred. *State ex rel. State Highway Commission of Missouri v. Cool's Tall Tower Restaurant and Marina, Inc.,* 654 S.W.2d 224 (Mo.App.1983)[1–4]. A party sustains no prejudice if the same facts have been shown by other evidence. *King v. Copp Trucking, Inc.,* 853 S.W.2d 304 (Mo.App. 1993)[2,3]. Dr. Dement presented product specific evidence involving Kaylo dust exposure. Dr. Tuteur presented evidence within his expertise-the relationship between asbestos dust exposure and mesothelioma. Dr. Tuteur did not establish any expertise to identify the level of exposure Nugent sustained to Kaylo dust, or the extent to which Kaylo was different in toxicity from any other asbestos. We find neither an abuse of discretion nor prejudice in the court's handling of Dr. Tuteur and Professor Ayer.

■■■ Plaintiff's final point is that the trial court erred in allowing defendants to utilize booklets to publish their exhibits to the jury. During the course of the trial the parties utilized projectors to show exhibits to the jury. In addition the plaintiff passed her exhibits to the jury for examination. Defendants advised that they intended to publish by furnishing the jurors individual booklets containing selected exhibits. When defendants sought to do so at the conclusion of the

evidence, plaintiff made her initial objection to that procedure. The trial court stated that it would allow such publication as an efficient and practical way to publish the exhibits to the jury and that such had been done in previous trials of this type. Plaintiff contends some of the exhibits were admitted on the issue of notice only and limiting instructions should have been given.

■■■ Jury examination of exhibits introduced into evidence is within the sound discretion of the trial court. *Sparks v. Consolidated Aluminum Company,* 679 S.W.2d 348 (Mo.App.1984)[3]. None of the exhibits plaintiff now contends were admitted on the issue of notice only was in fact so limitedly admitted. Further, plaintiff made no request for a limiting instruction. *See Clayton Center Associates v. W.R. Grace & Co.,* 861 S.W.2d 686 (Mo.App.1993)[10].

Plaintiff also contends she was prejudiced by the lack of notice that the court would allow booklets. Early in the trial, defendants indicated they would utilize such method. No objection was voiced. The court upon overruling plaintiff's objection to the booklets advised that the next morning both parties would be allowed to utilize booklets, albeit plaintiff had already passed each exhibit to the jurors individually. Both plaintiff and defendants published booklets simultaneously the next morning and at that time no objection was made. Plaintiff did not raise with the trial court the litany of complaints about the difficulty in preparing booklets which she now raises with this court and we have nothing in the record to support such complaints. We are cited to no law, and know of none, which prevents exhibits from being published to the jury as was done. The jurors were given a period of time to examine the booklets and they were then returned prior to deliberations. We find no abuse of discretion.

Judgment affirmed.

---

**3.** Plaintiff asserts defendants cannot complain about the Tuteur designation because they did not depose Dr. Tuteur. One of the purposes of Rule 56.01 is to allow a party to determine whether a deposition is necessary. In this case plaintiff designated 58 expert witnesses and utilized 4. Owens–Corning designated 55 and called 2. The spirit of the rule at least, if not the letter, mandates some more specific designation than that present here.

RHODES RUSSELL, J., concurs.

GARY M. GAERTNER, J., dissents in separate opinion.

GARY M. GAERTNER, Judge, dissenting.

I respectfully dissent with respect to the Hazard deposition. This deposition was taken over a decade prior to the immediate case, during unrelated litigation between parties with no identity of interests to the present parties. *See Maturo v. Stone,* 856 S.W.2d 84, 85–86 (Mo.App. E.D.1993). The prejudicial effect of the opinion testimony contained in the Hazard deposition cannot be deemed cured by the trial court's withdrawal instruction, given a full day after the deposition was read to the jury. In my view, the court abused its discretion in permitting the Hazard deposition to be entered into evidence.