**William FRIESE and Geraldine Friese, Plaintiffs–Appellants,**

v.

**Patricia J. MALLON, Defendant–Respondent.**

No. 70566.

Missouri Court of Appeals, Eastern District, Division Four.

March 4, 1997.

Ben N. Messina, St. Louis, for plaintiffs–appellants.

Wuestling & James, William F. James, St. Louis, for defendant–respondent.

KAROHL, Judge.

Plaintiffs, William and Geraldine Friese, appeal after the trial court directed a verdict in favor of defendant, Patricia Mallon. They petitioned for personal injuries sustained by William as a result of an auto collision with defendant. The trial court ruled plaintiffs failed to make a submissible case on medical causation. We reverse and remand.

On August 27, 1990, William Friese's car was rear-ended by defendant while stopped on New Florissant Road because a preceding vehicle was trying to make a left-hand turn. Geraldine Friese was not in the car. Immediately following the collision, a police officer asked Friese if he was injured. He replied that he did not know. He did not seek medical treatment on the day of the collision. The following day, however, due to increasing pain throughout his body he called his family physician, Dr. Fransico Garriga, for an appointment. At Dr. Garriga's office, Dr. Alvarez examined him. Dr. Alvarez took x-rays of Friese's shoulders, head and neck. He then prescribed medication.

However, Friese's pain in his right arm and shoulder lingered. Dr. Garriga referred him to Dr. Schlafly, an orthopedic surgeon. Dr. Schlafly performed an operation for a torn rotary cuff on Friese's right shoulder. He continued to see Dr. Schlafly a number of times after the operation. He still experienced pain in his right shoulder region radiating down into his right arm and hand. Dr. Schlafly prescribed medication for the pain, but since the symptoms persisted, he recommended a nerve conduction test for carpal tunnel syndrome. The test results indicated some nerve conduction abnormalities in the wrist, consistent with right carpal tunnel syndrome. Dr. Schlafly performed the carpal tunnel operation on February 18, 1991.

The pain, however, continued. Dr. Schlafly referred Friese to Dr. Krettek, a neurosurgeon. Dr. Krettek performed a series of tests on him but was unable to determine what was causing his pain.

Friese then returned to Dr. Schlafly because of pain in his back, hip and knee. Dr. Schlafly performed a complete x-ray of his pelvic section, center section, hips and left knee. Based on these x-rays he referred him back to Dr. Krettek.

Friese saw Dr. Krettek at the end of November, 1992. Dr. Krettek performed an MRI. He arranged for Friese to go to St. Luke's Hospital for a back operation.

After that operation, Friese returned to Dr. Schlafly for treatment on his shoulders and left knee. The pain in his left knee continued and Dr. Schlafly prescribed cortisone injections. In September, 1993, the pain in his left knee continued such that Dr. Schlafly recommended a total knee replacement. Thereafter, on October 28, 1993, a total knee replacement was performed on Friese. Currently, Friese still experiences pain but is getting back to doing his normal activities.

Friese was involved in a prior automobile collision in October, 1986, four years before the subject collision. As a result of that collision, he filed a petition claiming injuries to his neck, back, spine, left hip, vertebra, right shoulder and intervertebral. He suffered a right ulnar neuropathy cervical and lumbar spondylolysis, a bulging cervical disk and a cervical compression. He also claimed, in his 1986 petition, to suffer pain from arthritis as a direct and proximate result of an aggravation of preexisting arthritis in his neck and back. His petition claimed the injuries were not only disabling, but permanent, painful and progressive.

This case on the 1990 collision was tried on February 26, 1996, and February 27, 1996. Friese testified about the collision and the resulting injuries and treatment. His wife testified about his injuries and her loss of his services, society and companionship. Plaintiffs also presented Dr. Schlafly's deposition and Dr. Shale Rifkin's trial testimony. Dr. Rifkin had examined Friese in 1992 and 1994 to evaluate his injuries sustained in the 1990 collision.

Defendant objected to the hypotheticals posed by plaintiffs to both Dr. Schlafly and Dr. Rifkin. The trial court sustained the objections. It also sustained defendant's objection to the admittance of Friese's medical records. At the end of plaintiffs' evidence, defendant moved for a directed verdict. The trial court granted the motion holding that plaintiffs failed to make a submissible case on medical causation.

Plaintiffs raise four issues on appeal. First, they argue the trial court erred in sustaining defendant's objections as to the form of hypothetical questions on causation posed to Dr. Schlafly and Dr. Rifkin. Second, they argue the trial court erred in restricting Dr. Schlafly's and Dr. Rifkin's testimony concerning the physical condition of Friese before 1990. Third, they argue the trial court improperly sustained defendant's blanket objection to both hypothetical questions posed to Dr. Schlafly and Dr. Rifkin and to the medical records. Finally, they argue the trial court improperly refused plaintiffs the opportunity to introduce additional evidence.

In reviewing a directed verdict granted in favor of defendant, we view the evidence and permissible inferences most favorably to plaintiff, disregard contrary evidence and inferences and determine whether plaintiff made a submissible case. *Head v. National Super Markets, Inc.,* 902 S.W.2d 305, 306 (Mo.App. E.D.1995). A verdict directed against plaintiff will be reversed on appeal unless the facts and inferences are so strongly against plaintiff as to leave no room for reasonable minds to differ. *Essex v. Getty Oil Company,* 661 S.W.2d 544, 550 (Mo.App.1983).

Plaintiffs' Points I and III are interrelated. They will be addressed together. Points I and III each contain two subpoints. In Point I, plaintiffs argue the trial court erred in (a) sustaining defendant's objection that the hypotheticals posed to Dr. Schlafly during his deposition and to Dr. Rifkin at trial assumed facts not in evidence and (b) refusing to hear testimony provided by Dr. Rifkin that was not in response to a hypothetical. In Point III, plaintiffs argue the trial court erred in (a) sustaining defendant's objection

to the hypothetical questions without requiring defendant to specify which facts where not in evidence and (b) sustaining defendant's blanket objection to admitting Friese's medical records into evidence.

Beginning with Point III, subpoint (b), the trial court allowed Dr. Garriga's office records and St. Luke's hospital records of Friese to be marked as exhibits during the trial. Defendant admitted to the authenticity of the medical records. However, at the end of the trial, when plaintiffs asked for all the medical records to be admitted into evidence, defendant objected to the records as "being admitted in bulk." The court sustained that objection but allowed the records to be filed for purposes of appeal.

When a blanket objection is made to an entire offer of evidence, if any parts of the exhibit were admissible, the blanket objection should be overruled. *Allen v. St. Louis Public Service Company,* 365 Mo. 677, 285 S.W.2d 663, 667 (1956). It is not the trial court's duty "to sift the wheat from the chaff, which is what the court would be required to do in order to rule on a blanket objection." *Crockett by Crockett v. Schlingman,* 741 S.W.2d 717, 718 (Mo.App.1987).

The trial court improperly sustained defendant's objection for two reasons. First, defendant failed to make a specific objection as to what parts of the medical records she found inadmissible. Instead, she made a non-legal, blanket objection to the records "being admitted in bulk." Second, since the enactment of the Uniform Business Records Act, § 490.660—490.690 RSMo 1949, we have held medical records, properly authenticated, to be generally admissible. *See Allen,* 285 S.W.2d at 666. Therefore, since medical records, whose authenticity is undisputed, are almost always admissible to prove history, diagnosis, treatment and prognosis, we hold the trial court erred in sustaining the blanket objection.

We find it also erred in sustaining defendant's objection to the hypotheticals posed to Dr. Schlafly and Dr. Rifkin on the basis they assumed facts not in evidence. In Point III, subpoint (a), and similarly in Point I, sub-

point (a), plaintiffs argue the trial court erred in sustaining defendant's objection to the hypotheticals because (1) defendant failed to specify which facts were not in evidence, and (2) the assumed facts in the hypothetical could have been found from the medical records plaintiffs offered as evidence but which the trial court erroneously refused to admit.

During his deposition, plaintiffs asked Dr. Schlafly a hypothetical concerning Friese's injuries and course of treatment after his 1990 automobile collision. The hypothetical contained procedures Dr. Schlafly specifically performed on Friese and those which Dr. Schlafly had seen recorded in the medical records of other treating doctors. He was asked whether, based on a reasonable medical certainty, a causal connection existed between the auto collision of August 27, 1990, and the injuries he found in his examination of Friese. Defendant objected to the form of the question because it failed to contain a foundation as to certain parts of the hypothetical with respect to treatments that Dr. Schlafly did not perform.

Subject to that objection, Dr. Schlafly responded that he did have an opinion regarding causation. He believed the collision could have played a causative role in the need for the operations performed on Friese. Dr. Schlafly admitted that preexisting conditions existed, but testified "the symptoms that the patient experienced after the accident . . . play a role in the need for surgery."

The trial court sustained the objection on two grounds. First, it held Dr. Schlafly did not answer in as specific language as necessary when he said that it played a "causative role." It held "the doctor has to find it was the cause of it [his current condition], not played a role." Second, the trial court held Dr. Schlafly cannot answer a hypothetical which contains procedures performed by other doctors unless "it's posed to him in the proper hypothetical form and he answers in the proper form."

■ When an objection is made to a hypothetical question on the ground that it assumes facts not in evidence, counsel so objecting must point out what matters not in evidence are assumed in the hypothetical. *Blair v. Associated Wholesale Grocers, Inc.,* 593 S.W.2d 650, 654–55 (Mo.App.1980). If the objection lacks this specificity, it is insufficient to present and preserve error. *Id.*

■ Plaintiffs' hypothetical to Dr. Schlafly assumed facts primarily of the medical procedures he personally performed on Friese. The other assumed facts concerned procedures performed by Dr. Krettek, Dr. Alvarez, and Dr. Garriga. When defendant objected to the hypothetical, she never specifically stated which facts presented in the question were not admitted into evidence. She generally stated that there was no evidentiary foundation for the treatments Dr. Schlafly did not specifically perform on Friese. This is insufficient to preserve the error.

■ Further, if the trial court had not erred in refusing to admit the medical records into evidence, all assumed facts in the hypothetical would be in evidence. Once medical records have been admitted, an expert witness may consider them when answering a hypothetical question based on those records. *See Harris v. Goggins,* 374 S.W.2d 6, 15 (Mo. banc 1963). Dr. Schlafly had reviewed the medical records of Friese and was aware from those records of his past history, treatments and medications. Even if defendant had correctly preserved the error for appeal, the trial court erred in sustaining the objection because the records were admissible.

■ The same objection was also raised at trial by defendant when Dr. Rifkin was asked a causation hypothetical by plaintiffs. The trial court held the hypothetical was not based on evidence within the record because Friese's medical records were not evidence. It held that generally the medical records could not come in because they are "all hearsay." Based on the foregoing analysis regarding the medical records and the objection to Dr. Schlafly's deposition, the trial court also erred in sustaining this objection. A hearsay objection to medical records which are properly qualified under the Uniform Business Records Act is not effective. *Allen,* 285 S.W.2d at 666. Defendant agreed to the authenticity of the records as medical rec-

ords. Therefore, having provided the proper qualification of the medical records, and in the absence of a specific objection to the their admission, they were admissible and the objection should have been overruled.

In Point I, subpoint (b), plaintiffs argue the trial court erred in refusing to admit a portion of Dr. Rifkin's testimony that was not in response to a hypothetical. An expert may testify without the use of hypothetical questions, after a proper foundation has been laid, unless the court believes a hypothetical will make the expert's opinion more understandable or better assist the jury. Section 490.065.4 RSMo 1994. Here the trial court stated Dr. Rifkin's testimony must be in response to a hypothetical because Dr. Rifkin "didn't see [Friese] until . . . [two] years after the [second] accident." The trial court did not indicate that a hypothetical was necessary to make Dr. Rifkin's opinion more understandable or would better assist the jury. Plaintiffs asked Dr. Rifkin what his evaluation was of Friese's injury after asking him if he had reviewed all of Friese's past medical records. They were entitled to an answer since the proper foundation had been laid. A hypothetical is no longer necessary in such a case under § 490.065.4.

In Point II, plaintiffs argue the trial court erred in restricting Dr. Rifkin's testimony concerning the prior physical condition of Friese before the 1990 collision. After the trial court sustained defendant's objection and held plaintiffs must ask their causation questions to Dr. Rifkin in hypothetical form, plaintiffs rephrased the question. In hypothetical form they asked Dr. Rifkin if he had an opinion whether there was a causal connection between the 1986 accident and the injuries Dr. Rifkin examined Friese for in 1992. The hypothetical assumed facts concerning Friese's condition and subsequent treatments after the 1986 collision. Defendant objected to the form of the question. The trial court sustained the objection stating "[w]e're not concerned with the '86 accident here. We're concerned with the August 27, 1990 accident."

In an action for personal injuries, the health and physical condition of the injured person both prior and subsequent to the occurrence is material. *Spalding v. Monat,* 650 S.W.2d 629, 632 (Mo.App.1981). Any competent evidence tending to prove or disprove the nature and extent of the alleged injuries received is admissible. *Id.* The trial court erred in holding as irrelevant Dr. Rifkin's opinion comparing Friese's condition after the 1986 collision to his current condition. Evidence of the difference in Friese's condition prior to and after the 1990 collision is relevant to prove the extent to which that collision injured Friese. The excluded testimony would have assisted the jury.

Finally, in Point IV, plaintiffs argue the trial court improperly refused them the opportunity to introduce additional testimony. We elect not to decide this issue because it will not occur on retrial.

We reverse and remand for new trial.

RHODES RUSSELL, P.J., and SIMON, J., concur.