**Elizabeth SMITH and Joel Smith, Plaintiffs/Respondents,**

v.

**WAL–MART STORES, INC., and Stacey Crocker, Defendants/Appellants.**

No. 71778.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 17, 1998.

Application for Transfer Denied
June 16, 1998.

Stefan J. Glynias, Adrian P. Sulser, St. Louis, for defendants-appellants.

Eugene H. Fahrenkrog, Jr., Michael A. Gross, St. Louis, for plaintiffs-respondents.

ROBERT G. DOWD, Jr., Presiding Judge.

Elizabeth Smith, Plaintiff, brought suit for personal injuries on a premises liability theory against Defendant, Wal–Mart Stores, Inc. Plaintiff sustained injury to her back when she slipped and fell upon entering the vestibule of the store. Plaintiff's husband, Joel Smith, brought a derivative action against Defendant for loss of consortium. Finding Wal–Mart 100% at fault, the jury returned a verdict in favor of Plaintiff, awarding her $300,000 and awarding $25,000 to Joel. Judgment was entered against Defendant, and this appeal followed. Defendant asserts four points of error: (1) failure to establish a submissible case because the water upon which Plaintiff slipped was an open and obvious condition; (2) cumulative evidentiary errors prejudiced Defendant; (3) the "trial court erred in denying Defendant's motion for new trial for the reason that the jury's assessment that Defendant was 100% at fault and Plaintiff Elizabeth Smith was 0% at fault was against the weight of the evidence and against the law under the evidence"; and (4) alternatively, the court erred in overruling Defendant's motion for remittitur due to an excessive jury verdict. We affirm.

In its first point on appeal, Wal–Mart asserts the trial court erred in failing to sustain its motion for directed verdict and motion for judgment notwithstanding the verdict. Defendant argues Plaintiff failed to make a submissible case due to the open and obvious exception to premises liability. When we review a motion for directed verdict, we view "the evidence and all inferences to be made from it in the light most favorable to the plaintiff." *Hellmann v. Droege's Super Market, Inc.*, 943 S.W.2d 655, 657 (Mo. App. E.D.1997). "We disregard all evidence and inferences to the contrary to determine if plaintiff made a submissible case." *Id.* Only if reasonable minds cannot differ as to the proper verdict should a court order a directed verdict. *Id.*

The facts with this standard in mind follow: On July 18, 1994, at approximately 5 p.m., Elizabeth took her fifteen-year-old son, Andrew Mendenhall, to Defendant's store to buy a pair of "cleats" for Andrew's football

practice that evening which began at 6 p.m. When Elizabeth and her son arrived at the store, water was flowing across the parking lot. The water had accumulated as a result of Wal–Mart watering its plants and shrubs which were arranged in a lawn and garden display outside in front of the store. The watering and the overflow required customers to walk through water in order to get to the store's entrance. Andrew tried to jump over the flow of water, but part of his right foot landed in the stream. Elizabeth walked on the tips of her toes through the shallower parts of the water to avoid getting her canvas tennis shoes wet.

Arriving at the double doors of the Wal–Mart vestibule entrance first, Andrew opened the doors and navigated the vestibule without incident. Elizabeth followed. She stepped into the vestibule with her left foot first, followed by her right foot. As Elizabeth shifted her weight to take her next step, her right foot went out from underneath her, and her left foot went behind her; her left knee came down and hit the floor first. To prevent herself from doing "the splits," Elizabeth bent and twisted around to try to keep her balance. She twisted her right leg around and landed on her backside. While on the floor, she noticed for the first time that the floor was wet. Elizabeth called to her son to help her up off the floor. After she was helped up, she noticed the back of her shorts were completely wet, her knees were wet, and water was dripping down the back of her legs. After entering the store, Elizabeth informed the store "greeter" and assistant manager of her fall and filled out an incident report. After buying the cleats, Elizabeth and Andrew left Wal–Mart and went to Andrew's football practice.

Elizabeth's back began to hurt before she left the store and continued to hurt into the night. The next day, July 19, she consulted Dr. Cornett [1] at Mercy Medical Center, had X-rays taken, and received a prescription for medication. On July 20, Elizabeth went to Salem Hospital for treatment; after more X-rays, she was told she needed a week of bed rest. After another consultation with Dr.

Cornett, he suggested Elizabeth see an orthopedic surgeon. Elizabeth went to see Dr. Samson for the first time on August 10, 1994, complaining of pain in her lower back and sharp pains that went into her left leg. After examining her, Dr. Samson diagnosed her with left sciatica, a term he defined as describing pain in the left leg along the course of the sciatic nerve, which he strongly believed was caused by a herniated or ruptured disc. He initially prescribed an anti-inflammatory medicine and asked her to limit her activity, including staying off work. Dr. Samson again saw Elizabeth three weeks later, found her condition had improved, and instructed her to call him in ten days if the pain in her leg returned or increased. She called him on September 7 to tell him her husband had lost his job, and she needed to return to work. He cleared her for work but gave her a 15–pound lifting restriction. She called him again on September 14 to say she had more pain and Dr. Samson prescribed some medication and arranged for her to have a CAT scan. From the CAT scan, Dr. Samson found Elizabeth had a herniated disc which called for surgical treatment, a laminectomy and discectomy. Dr. Samson explained that this procedure is not always successful, pain may persist after removing the disc. Furthermore, Dr. Samson explained that after surgery, elasticity or flexibility may be lost from the presence of scar tissue. About a month after surgery, Dr. Samson found Elizabeth continued to have some pain and numbness in her leg and pain in her back.

Wal–Mart asserts the water in the vestibule upon which Elizabeth slipped was an open and obvious condition from which it could have reasonably relied on her to have protected herself and, therefore, Wal–Mart is not liable to Plaintiff for her injuries. Generally, the "duty owed to an invitee by the owner of the premises is the exercise of reasonable and ordinary care in making the premises safe." *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 903 (Mo.App. E.D.1996). A landowner is liable when his or her "conduct falls below the applicable stan-

---

**1.** We have found references in the record to different spellings of this name, both Cornett and Carnett, and have chosen Cornett for the sake of simplicity.

dard of care established to protect against unreasonable risk of harm." *Hellmann,* 943 S.W.2d at 658. The applicable standard of care is a question of law for the courts. *Id.* It is a question of fact for the jury to determine whether the landowner fell below that standard of care. *Id.*

In *Harris v. Niehaus,* 857 S.W.2d 222, 226 (Mo.1993), the Supreme Court adopted sections 343 and 343A(1) of the Restatement (Second) of Torts. Section 343 requires that for a possessor of land to meet the applicable standard of care, the possessor of land must "(1) exercise reasonable care; (2) disclose to the invitee all dangerous conditions which are known to the possessor and are likely not to be discovered by the invitee; and (3) see that the premises are safe for the reception of a visitor, or at least ascertain the condition of the land, to give such warning that the invitee may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it." *Id.* "Under the second element of section 343, when the dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, a possessor of land does not breach the standard of care owed to invitees 'unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Id.* (emphasis omitted).

■ Defendant argues that the flowing and pooled water present on the parking lot in front of the vestibule and the water inside the vestibule posed an open and obvious danger which Elizabeth discovered prior to her fall. However, Elizabeth testified that she did not see the puddle of water in the vestibule before she entered into it. Instead, she only noticed the water once she had fallen and was on the ground. Testimony that no sunlight entered into the vestibule which could have glistened on the floor to make the puddle noticeable bolsters this evidence. *See Robinson v. Safeway Stores Inc.,* 655 S.W.2d 617, 619 (Mo.App.1983) (concluding "it cannot be said as a matter of law that clear water on a light-colored tile floor posed a danger so open and obvious as to preclude submission of plaintiff's case"). Based on the above evidence, we cannot say the court erred in refusing to direct a verdict in favor of Defendant.

■ However, even if the condition was open and obvious, which Defendant asserts, this court's *en banc* decision in *Hellmann* shows that a court's finding of an open and obvious condition does not end the inquiry. *See Harris,* 857 S.W.2d at 226; *Preston v. Wal–Mart Stores, Inc.,* 923 S.W.2d 426 (Mo. App. W.D.1996). Instead, there remains a question for the jury whether or not a landowner "should anticipate that the risk of harm exists even if the invitee exercises due care in the face of the open and obvious danger." *Hellmann,* 943 S.W.2d at 659.

In *Hellmann,* the plaintiff fell on an icy patch in the store's parking lot on her way into defendant's store. This court explained that the icy patches in the parking lot were an open and obvious condition and, therefore, defendant "was entitled to expect its customers to 'exercise ordinary perception, intelligence and judgment, discover this obvious condition, appreciate the risk it presented, and take the minimal steps necessary to avert tragedy.'" *Id.* We continued, however, to explain that defendant

> had a duty to anticipate that an invitee, even after using such perception and intelligence, might park her vehicle on an icy or patchy space, traverse the parking lot to fulfill her shopping objective, and be harmed while doing so. In other words, the risk of harm existed even if plaintiff exercised due care....

*Id.*

■ Upon review of the record, we find the evidence supports a finding that Wal–Mart should have anticipated harm to its invitees. The record shows Wal–Mart was aware the vestibule floor was wet and could be slippery considering another customer, an off-duty Wal–Mart employee, had slid on the water in the vestibule and informed the greeter about the incident an hour before Elizabeth fell. Moreover, Defendant knew the overflow of water from the display of plants and shrubs caused water to be tracked into the vestibule. We find a jury could have found Wal–Mart should have anticipated that, as in *Hellmann,* a reasonable person

would take a reasonably anticipated risk of walking across a wet parking lot and enter a wet vestibule for the purpose of obtaining the benefit of shopping at the store. Defendant's first point is denied.

In its second point on appeal, Defendant asserts the trial court erred in denying its motion for new trial because cumulative evidentiary errors were made during the trial which resulted in prejudice to Defendant. Defendant argues it suffered prejudice from the following alleged errors: (1) the trial court erred in allowing inadmissible expert opinion testimony; (2) the trial court erred in allowing inadmissible testimony of Plaintiff's husband's physical disabilities; (3) the trial court erred in allowing inadmissible evidence of subsequent remedial measures; (4) the admission of cumulative evidence prejudiced Defendant; and (5) the verdict was excessive and indicated bias, prejudice and misconduct on the part of the jury.

■ "[A] new trial can be ordered due to cumulative error, even without deciding whether any single point would constitute grounds for reversal." *DeLaporte v. Robey Bldg. Supply, Inc.,* 812 S.W.2d 526, 536 (Mo. App. E.D.1991). However, we will not grant a party relief due to cumulative error "when there is no showing that prejudice resulted from any rulings of the trial court." *Koontz v. Ferber,* 870 S.W.2d 885, 894 (Mo.App. W.D.1993). We find the errors alleged by Defendant either constitute no error or are harmless and do not warrant a new trial, and therefore, we affirm the trial court's denial of Defendant's motion for new trial.

First, Defendant asserts the trial court erred in allowing Plaintiff to designate Dr. Hertel as an expert and read his medical report to the jury. In his report, Dr. Hertel gave the opinion that Plaintiff's herniated disc was a result of her fall at Wal–Mart. During discovery, Defendant endorsed Dr. Hertel as an expert witness. Plaintiff requested a copy of the report Dr. Hertel made after examining Plaintiff. Finding this report favorable, Plaintiff listed Dr. Hertel as an expert witness 10 days before trial, fearing Defendant would disendorse Dr. Hertel at the last minute. However, Dr. Hertel urged Plaintiff not to use him as an expert

witness because he was too busy. To accommodate Dr. Hertel, Plaintiff subpoenaed Dr. Hertel's custodian of records in order to admit the report. Defendant and Plaintiff agreed to dismiss the custodian, in effect waiving any challenges to the admission of the report as a business record. However, Defendant objected to the admission of the opinion on three grounds: using Dr. Hertel's opinion would constitute surprise; the opinion was inadmissible hearsay; and Dr. Hertel was not properly qualified as an expert.

■ First, Defendant's claim that Dr. Hertel's opinion is inadmissible because it would deprive Defendant of the opportunity to cross-examine Dr. Hertel regarding his findings and conclusions has no merit. The objection of the denial of cross-examination is, in effect, the same as the objection of hearsay. *Allen v. St. Louis Public Service Co.,* 365 Mo. 677, 285 S.W.2d 663, 666 (1956). "A hearsay objection to medical records which are properly qualified under the Business Records Act is not effective." *Friese v. Mallon,* 940 S.W.2d 37, 41 (Mo.App. E.D. 1997). Here, as in *Friese,* defendant agreed to the authenticity of the records as medical records by relieving the custodian from having to authenticate them. *Id.* Once the records were properly qualified, the contents were admissible unless specifically objected to on other grounds. *Id.* "The mere fact that the records include a statement of expert medical opinion does not bar admission of the records." *Miller v. Engle,* 724 S.W.2d 637, 640 (Mo.App. W.D.1986). Instead, once a document has been qualified' as a business record, "it is of no consequence that the expert witness is not available for cross-examination." *Id.* (*citing Allen v. St. Louis Public Service Co.,* 365 Mo. 677, 285 S.W.2d 663, 667 (1956)).

■ Defendant's argument that Dr. Hertel's opinion constitutes surprise also lacks merit. Defendant chose Dr. Hertel to examine Plaintiff before trial; Defendant listed Dr. Hertel as an expert witness; and Defendant had access to Dr. Hertel's report months before trial. In fact, "[i]t is common practice to obtain favorable concessions from the other party's expert or treating physi-

cian." *Brandt v. Pelican*, 856 S.W.2d 658, 663 (Mo.1993). We find this evidence clearly shows Defendant was not surprised by Plaintiff's late endorsement of Dr. Hertel as an expert witness. *See Turner v. Fuqua Homes, Inc.*, 742 S.W.2d 603, 611 (Mo.App. W.D.1987).

Defendant also argues Plaintiff cannot offer Dr. Hertel's opinion which is contained in the records because Plaintiff failed to properly qualify Dr. Hertel as an expert. "The determination to admit or exclude expert testimony is left to the sound discretion of the trial court." *Nugent v. Owens–Corning Fiberglas, Inc.*, 925 S.W.2d 925, 931 (Mo.App. E.D.1996). "Each case is determined by its own facts as to whether an abuse of discretion occurred." *Id.* Testimony should be admitted if the witness possesses some qualification. *Krame v. Waller*, 849 S.W.2d 236, 240 (Mo.App. E.D.1993). Furthermore, even if the evidence complained of is inadmissible, we will not find a party has sustained prejudice from the court's failure to exclude the inadmissible evidence if the record demonstrates that the "same facts have been shown by other evidence." *Id.*

In *Krame*, the plaintiff objected to defendant's reading into evidence excerpts of letters from two doctors because neither doctor had been qualified as an expert. The trial court overruled the objection and this court affirmed.. Based on the facts that the plaintiff had sought the opinions of the doctors on her own, admitted that one doctor was a neurosurgeon and one was an orthopedic surgeon, and testified that both doctors had advised her that surgery was unnecessary after examining her, we concluded the facts showed the doctors possessed some qualification and, therefore, their testimony should be admitted. *Id.*

Similarly here, we find the trial court did not abuse its discretion in admitting Dr. Hertel's report as expert testimony. Defendant sent Plaintiff to be examined by Dr. Hertel. Defendant endorsed Dr. Hertel as an expert witness prior to trial. Furthermore, Plaintiff's counsel directed the court to the report, which both parties agreed qualified as a business record, which referred to Dr. Hertel as a doctor. Moreover, Defen-

dant cannot complain it was prejudiced by the admission of Dr. Hertel's opinion considering Plaintiff also offered at trial like testimony from the deposition of Dr. Samson which stated it was Dr. Samson's opinion "to one of a reasonable degree of medical certainty that the fall that occurred as described and was given historically caused the herniated disc." We find the trial court did not err in allowing this testimony. Point denied.

Second, Defendant complains that the court erred in allowing Plaintiff to submit evidence that subsequent to Elizabeth's fall at Wal–Mart, Joel had become physically disabled. Defendant argues this evidence was irrelevant to any issue in the case and was offered solely to appeal to the jury's sympathy. First, in its brief to this court, Defendant directs us to four places in the transcript which it argues the trial court erred in admitting testimony about Joel's physical condition because such evidence was irrelevant, cumulative, and prejudicial. However, in none of these instances did Defendant object to the testimony. "A party who fails to object to testimony at trial fails to preserve the issue for appellate review." *McHaffie v. Bunch*, 891 S.W.2d 822, 830 (Mo.1995). Because Defendant failed to timely object, it failed to preserve the issue for appellate review. However, "[u]nder Rule 84.13(c), plain error affecting substantial rights, though not raised or preserved, may be reviewed in our discretion when we find manifest injustice or a miscarriage of justice has resulted." *Mediq PRN Life Support Services, Inc. v. Abrams*, 899 S.W.2d 101, 109 (Mo.App. E.D.1994). We find plain error review is not warranted here. Evidence that Elizabeth must perform all of the household chores, and that those chores cause her pain, was relevant to her claim for damages. Point denied.

In its third allegation of evidentiary error, Defendant asserts the trial court erred in allowing Plaintiff to submit evidence of Defendant's use of mats in the entrance vestibule after Plaintiff fell. Defendant directs us to three instances of alleged error and argues the evidence was inadmissible evidence of subsequent remedial measures since the

testimony was not offered to prove ownership, control, feasibility of precautionary measures, or to impeach but was offered solely for the purpose of showing Defendant was negligent.

 "Evidence of subsequent remedial measures is not admissible to prove antecedent negligence, but may be admissible for other purposes." *Brooks v. Elders, Inc.* 896 S.W.2d 744, 745 (Mo.App. E.D.1995). Courts have held these subsequent remedial measures used to show negligence to be inadmissible for two reasons: " '(1) "If precautions taken could be used as evidence of previous improper conditions, no one, after an accident, would make improvements for that would be used against him," and (2) that the changes are irrelevant as to what the previous condition was.' " *Id.* (*quoting Pollard v. Ashby,* 793 S.W.2d 394, 402 (Mo.App.1990)). However, exceptions to this rule are made when the evidence of the subsequent remedial measure is offered to prove "ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." *Id.*

 Defendant, however, failed to preserve this point for our review. In its motion for new trial, Defendant argued the court erred in permitting Plaintiff to introduce evidence "regarding the presence of water on the vestibule floor of Defendant's store and the use of floormats at Defendant's Salem store on *prior* occasions." (Emphasis ours). Therefore, Defendant did not challenge the admission of evidence of mats used as a subsequent remedial measure. Because Defendant failed to include this allegation of error in its motion for new trial, Defendant has not preserved it for appeal. *Webb v. Missouri Highway and Transp. Com'n.,* 947 S.W.2d 490, 491 (Mo.App. E.D.1997).

However, we may review Defendant's allegations of error, *ex gratia,* under the plain error rule. *Holcomb v. University Properties,* 708 S.W.2d 740 (Mo.App. E.D.1986) (*citing* Rule 84.13(c)). Defendant directs this court to two instances where it alleges the trial court erred in allowing inadmissible evidence of subsequent remedial measures. First, Defendant points to testimony from an answer to an interrogatory which states that minutes after Plaintiff fell, a Wal–Mart employee placed mats in the area where the fall occurred. However, Defendant did not object to this testimony. In fact, prior to its admission, Defendant specifically stated it had no objection to the answer being read to the jury. Defendant also directs us to testimony from the Salem store manger who testified that Wal–Mart used mats after Plaintiff's accident. However, Plaintiff asserts that Defendant cannot complain since Defendant opened the door to such testimony. Specifically, during trial, Defendant asked the store manager whether since he had managed that Wal–Mart, anyone had ever slipped in the vestibule *before or after* Plaintiff fell. (Emphasis ours). The trial court concluded Plaintiff could then ask whether there were any days after Plaintiff's fall that mats were not present in the vestibule. Defendant failed to object to this question. Instead, defense counsel stated that he had "no problem" with Plaintiff's counsel asking that question. Point denied.

 Defendant also argues that the evidence of water in the parking lot and evidence of water and mats in the vestibule were cumulative since those facts were already established and, therefore, Plaintiff only offered the evidence to emphasize their significance to the jury. We disagree. "Evidence should not be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the evidence introduced by the respective parties." *Kummer v. Cruz,* 752 S.W.2d 801, 808 (Mo.App. E.D.1988). Wal–Mart's defense through the litigation was based on the comparative fault exception to landowner liability. The condition of the vestibule, therefore, bears directly on the issue of whether the landowner, nevertheless, should have anticipated harm to its invitees despite the obviousness of the dangerous condition. *See Hellmann,* 943 S.W.2d at 658. Therefore, the question of whether Wal–Mart should have anticipated the danger posed to its invitees by the open and obvious condition becomes a central issue in the case. We find the trial court did not err in allowing cumulative evidence regarding the condition of the vestibule on occasions prior to Plaintiff's fall

because they were necessary and relevant to a material issue in the case, i.e. whether or not Wal–Mart should have anticipated its invitees would be subject to harm despite the obviousness of the condition. Point denied.

 Defendant also asserts that the jury verdict in favor of Plaintiffs was grossly excessive as to indicate bias, prejudice and misconduct on the part of the jury, which was produced by trial error and misconduct by Plaintiff as asserted in its above allegations of error. Once a jury has determined the award of damages, "the trial judge may find passion and prejudice from an excessive verdict." *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo.1993). If the verdict is excessive due to passion and prejudice on the part of the jury, "then the judgment is severely prejudiced and can only be addressed through a new trial." *Fust v. Francois*, 913 S.W.2d 38, 49 (Mo.App. E.D. 1995). "Such relief is only available upon a showing that trial error incited prejudice in the jury." *Id.*

 "A trial court has great discretion in approving the verdict or setting it aside as excessive" and we will not disturb that decision unless there has been an abuse of discretion either by the trial judge or the jury. *Callahan*, 863 S.W.2d at 872. The complaining party cannot direct the appellate court to the size of the verdict alone to show passion and prejudice by the jury. *Id.* Instead, he or she must show some other error was committed during the trial. *Id.* "Specifically, appellant must show, first, that the verdict, when viewed in the light most favorable to the prevailing party, was 'glaringly unwarranted.'" *Id.* "Second, appellant must show trial error or misconduct by the prevailing party that was responsible for producing the passion or prejudice." *Id.* We find Defendant failed to show any trial error or misconduct was severe enough to produce prejudice or passion and, therefore, there are no grounds for a new trial. Point denied.

 In its third point on appeal, Defendant asserts the trial court erred in denying its motion for new trial because the jury's assessment of Defendant being 100% at fault was against the weight of the evidence. In considering a motion for a new trial, the trial court may "consider whether the verdict is against the weight of the evidence." *Miller v. Neill*, 867 S.W.2d 523, 529 (Mo.App. E.D. 1993). We review the court's denial of Defendant's motion for new trial "to determine if there was substantial evidence to support the verdict." *Miller v. Gillespie*, 853 S.W.2d 342, 343–44 (Mo.App. E.D.1993). We consider the evidence in the light most favorable to the jury's verdict. *Id.* at 344. However, matters such as "the weight of the evidence, credibility of the witnesses and resolution of conflicts in the testimony" are not subject to our review. *Id.* Compare *Murphy v. Carron*, 536 S.W.2d 30 (Mo.1976) (holding that appellate courts may set aside a decree or judgment on the ground that it is against the weight of the evidence in court-tried cases). We will not disturb the jury's verdict "unless there is a complete absence of probative facts to support it." *Id.* Here, the trial court considered and overruled Defendant's motion for new trial. Upon review of the evidence we cannot say there are no probative facts to support the verdict in favor of Plaintiffs. Point denied.

 Finally, in its fourth point on appeal, Defendant contends the trial court erred in denying its motion for a remittitur because the damages were excessive. "The assessment of damages is primarily the function of the jury." *King v. Unidynamics Corp.*, 943 S.W.2d 262, 268 (Mo.App. E.D. 1997). "The trial court has broad discretion in ordering remittitur and its decision whether or not to reduce damages will not be disturbed on appeal absent an abuse of discretion so grossly excessive that it shocks the conscience and convinces this court that both the trial judge and the jury have abused their discretion." *Id.* In reviewing whether a verdict is excessive we are "limited to a consideration of the evidence which supports the verdict excluding that which disaffirms it." *Wright v. Fox–Stanley Photo Products, Inc.*, 639 S.W.2d 407, 410 (Mo.App. E.D. 1982). "There is no precise formula for determining whether a verdict is excessive, and each case must be considered on its own facts with the ultimate test being what fairly and reasonable compensates plaintiff for the

injuries sustained." *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 211 (Mo.1991).

Plaintiff's medical bills and lost wages totaled $19,000. In addition, Plaintiff, thirty-three years old at the time of trial, continues to have back pain as a result from her fall at Wal-Mart. Her little toe on her left leg is completely numb. Plaintiff must wear a back brace every day; she cannot stand for long periods of time. Plaintiff's and her husband's sex life has diminished. She cannot execute most household chores, such as giving her youngest son a bath, washing heavy pots and pans, mopping, or vacuuming, without pain. Prior to the fall, she enjoyed camping with her family; now she is unable to camp. Based upon the above mentioned circumstances, we cannot say that the award here was so grossly excessive as to shock the conscience or that the jury or the trial court abused its discretion. *See Lester v. Sayles*, 850 S.W.2d 858, 871 (Mo.1993) (award of $1,674,000 was not excessive even though plaintiff's medical expenses were approximately $86,000 considering the evidence indicated future surgeries and therapy, and plaintiff needed full-time care); *Patrick v. Alphin*, 825 S.W.2d 11, 14 (Mo.App. E.D.1992) (finding award of $750,000 to car driver and $400,000 to his wife for loss of consortium was not grossly excessive as to shock the conscience considering driver's condition prohibited him from working or participating in normal family and social activities). Point denied.

Judgment is affirmed.

SIMON and HOFF, JJ., concur.